WESTERN UNION TELEGRAPH COMPANY v. HENRY LYMAN.

No. 196.

1. **Telegram — Notice Implied.** — A dispatch was directed to the father that his child was dying, and calling for an answer. In the nature of things he would be expected to reply to such message, and also to hasten home to the funeral. The petition by the father alleged that had the telegram been received he would have so replied that the funeral of the child would have been delayed so that he could have been present. These allegations, and mental suffering, etc., give cause of action for nondelivery of the message.

2. **Duty of Telegraph Company on Receiving Message.** — A telegraph company receiving a message from another company, for transmission, takes it with the implied duty that it will exercise reasonable diligence and dispatch in transmitting the message to its place of destination, and in delivering it to the addressee.

3. **Repeating Message.** — That the message was not repeated did not excuse an error chargeable to the employes of the telegraph company in misdirecting a dispatch; e. g., directing to "Normah" instead of "Norman." Repeating would not have corrected such mistake.

APPEAL from Lampasas. Tried below before Hon. W. A. BLACKBURN.

*W. B. Abney* and *W. H. Browning*, for appellant. — 1. In an action for damages based on a breach of a contract to transmit and deliver a telegram, the plaintiff is confined in his damages to such as are the natural and necessary consequence of a breach of the contract, and which, therefore, may reasonably be supposed to have been in contemplation of both parties at the time they made the contract. McAllen v. Tel. Co., 70 Texas, 243; Tel. Co. v. Smith, 76 Texas, 253; Smith v. Tel. Co., 83 Ky., 104; Baldwin v. Tel. Co., 45 N. Y., 744; 4 Laws. Rights, Rem., and Prac., sec. 1968.

2. In receiving messages for transmission and delivery, defendant did not assume or agree to transmit and deliver same "without delay," but only to use diligence in the transmission and delivery thereof. Tel. Co. v. Edsall, 63 Texas, 674; Railway v. Baird, 75 Texas, 263; Railway v. Williams, 77 Texas, 121; Scott & Jarn. Tel., secs. 288, 289.

*Walker & League* and *Mathews & Wood*, for appellee.

FISHER, CHIEF JUSTICE.—October 14, 1889, appellee sued the appellant for the sum of $1900 as damages resulting from its negligence in failing to deliver to him at the town of Norman, Indian Territory, the following telegraphic message:

"LAMPASAS, TEXAS, May 9, 1889.

"*To Henry Lyman, Norman, Indian Territory:*

"Come at once; baby is dying. Answer.

[Signed]                                    "MRS. HENRY LYMAN."

A verdict and judgment resulted in appellee's favor for the sum of $1475.

*Findings of Fact.*— 1. That Henry Lyman and Mrs. Henry Lyman were, at the time the message was written, husband and wife, and were the parents of the child mentioned in the telegram; and that at the time of sending the message, and after, the plaintiff's wife and child resided in Lampasas, Texas, but the plaintiff was at that time, to-wit, the 9th day of May, 1889, and the 10th and 11th of May, 1889, in the town of Norman, Indian Territory.

2. That the child mentioned in the telegram was in a dying condition at the time the message was sent, and died in Lampasas, Texas, on the morning of May 10, 1889, and was buried the same day at 5 o'clock p. m.

3. On the 9th of May, 1889, about 1 o'clock p. m., Mrs. Henry Lyman, at Lampasas, Texas, delivered to one McKnight, agent of the Erie Telegraph Company (she at the time paying the charges demanded), the following telegram, to be sent and transmitted to the plaintiff at Norman, Indian Territory:

"LAMPASAS, TEXAS, May 9, 1889.

"*To Henry Lyman, Norman, Indian Territory:*

"Come at once; baby is dying.    Answer.

[Signed]                    "MRS. HENRY LYMAN."

That the Erie Telegraph Company received said message and promptly sent and transmitted the same over its wires to the appellant at Austin, Texas, to be sent and transmitted over the line of the appellant. That at the time McKnight was the agent of the Erie Telegraph Company, and that it was the custom of said company to receive messages to be sent and transmitted over the line of appellant.

4. That at the time the appellant operated and controlled a telegraph line from Austin, Texas, to Norman, Indian Territory, and that it had an operator at each of said places who received messages for delivery addressed to parties there.

5. That said message was, on the evening of the 9th of May, 1889, within a reasonable time after it was sent from Lampasas, Texas, received by the appellant at Austin, Texas, and it received the message to be sent as addressed to Norman, Indian Territory, and undertook to transmit and send same to that place as addressed. The appellant sent said message from Austin, Texas, by Dallas, Texas, to Kansas City, Missouri, to be forwarded to its destination over its line. At that time the appellant also operated and controlled a line from Austin, Texas, by way of Temple, Texas, and Fort Worth, Texas, north to Norman, Indian Territory, which is the most direct line from Austin, Texas, to Norman, Indian Territory.

6. After the appellant received said message at Austin, Texas, and

after it undertook to send it, the word "Norman" in the message was changed by some of the agents of appellant, in transmitting it, to read "Normah," and that the message was received at the office of appellant at Kansas City in the changed condition, and that that office undertook by reasonable dispatch to ascertain how the change was made, and to ascertain to what place the message was addressed, and when it ascertained that the place of destination was Norman, it sent the message there, which reached that place May 10, about twenty-four hours after it was sent from Lampasas, Texas.

7. At the time the message was received at Norman, Indian Territory, by the operator of appellant, that place contained about forty or fifty inhabitants, and the appellee, who was there on that day and the day preceding, could have been easily found by the operator by the exercise of reasonable diligence, but he was not found by the operator, and the message was not delivered to him.

8. If the message had been sent by appellant from Austin, Texas, to Norman by reasonable dispatch over the most direct route, it could have reached the latter place in the evening of May 9, and could have been delivered to appellee on that evening.

9. If the name of the place of destination had not been changed after the message went into the hands of appellant, and reasonable diligence had been exercised by appellant in sending it to Norman, it would have arrived at that place on the evening of the same day it was sent from Lampasas; and if reasonable diligence had been used by the operator at Norman—if the message had been received by him—he could have delivered the same to the appellee upon the evening of that day.

10. If the message had been promptly sent and delivered to appellee by appellant, he could have by telegram delayed the funeral and burial of his child, and have reached Lampasas in time for the funeral and burial services. Appellee testified, that he would have upon the receipt of said message immediately telegraphed his wife to delay the burial until his arrival, and that he would have immediately started for Lampasas, and could have reached that place in time for the funeral and in time to see his child before it was buried. The wife testified, that if she had received such a message from her husband she would have delayed the burial until his arrival. We have no reason to doubt the truth of the foregoing evidence, and find the facts to be as so stated.

11. Said message was never delivered to appellee, and he for the first time heard of the death of his child on May 14 by letter.

12. The appellant was guilty of negligence in failing to exercise reasonable diligence and dispatch in transmitting said message from Austin, Texas, to Norman, Indian Territory, and failing to deliver same to appellee.

13. By reason of the negligence of appellant as stated, the jury has

found that the appellee has sustained damages the amount of their verdict.   Under the facts we can not say that it is excessive in amount.

*Opinion.*—Several demurrers were addressed to the petition, which we think were properly overruled.  There is nothing speculative in the averments of the petition.   The dispatch, announcing the fact that the child was dying, called for an answer, and in the nature of things it was not only to be expected that the parent would reply to the message, but would also hasten home for the funeral.   These were facts that the appellant should have contemplated when it received the message.  It was a reasonable implication arising from the language of the message.   The petition states, that he would have so replied to the message as to delay the funeral until his arrival, and that he would have immediately departed for Lampasas, and would have reached there in time for the funeral, and it would have been delayed until his arrival.  The allegations presenting these facts are not the statement of unreasonable or speculative contingencies, but are the averment of facts and contingencies that reasonably arise out of the circumstances and conditions existing at the time, and, in some respects, are reasonably implied by the terms of the message itself.   They are simply the statement of facts that may or may not be true, as might be developed by the evidence.   The petition stating them to be facts that are true, the court upon demurrer should so consider them.   There was no error in overruling the demurrers.

The entire charge of the court, when so considered, is as favorable to appellant as it could ask.   The appellee might have justly complained of it if the verdict had gone against him.

The undisputed evidence in the record shows, that the appellant accepted the message from the Erie Telegraph Company to be sent over its line to Norman, Indian Territory.  The fact that the message was accepted in the usual course of business by the appellant, for transmission to its destination, brings about an implied contractual relation with the appellee.   The implied promise resulting from that fact is, that the telegraph company will exercise reasonable diligence and dispatch in transmitting the message to its destination and there delivering it to the addressee.  This is a duty resting upon the telegraph company who receives a message for transmission in its usual course of business, without some agreement limiting its liability and which actually undertakes to transmit it.  When the acts of the company have reached this stage, it can not excuse its acts of negligence in dealing with the message by denying that any contractual relations exist between it and the sender.   The right of the appellee to hold the appellant liable for its negligence does not depend upon the fact that McKnight, as agent of the Erie Telegraph Company, had the right to make a contract binding upon the appellant, but his right can rest upon the implied contract between him and the appellant, result-

ing from the fact of its receiving and undertaking, in the usual course of its business as a transmitter of telegraphic messages, to transmit this message by the exercise of ordinary diligence to its destination. The facts clearly show that the failure to promptly transmit the message to Norman and there deliver it to appellee is attributable to the negligence of the appellant.

If it was a part of the contract, as contended by appellant, that the message should be repeated in order to guard against errors in transmitting it, and that the message in question was unrepeated, it would interpose no defense in this case, because, under the facts, the error in transmitting the message could not have been corrected by so repeating the message. The error made in sending the message was by some of the servants of appellant substituting the word "Normah" instead of "Norman," the place of destination. The message was not received at Norman until twenty-four hours after it was started from Lampasas, and when it reached Norman it was properly addressed to that place. The process of repeating a message consists in the receiving operator repeating it to the operator at the place of sending. This is for the purpose of guarding against any error that may be committed in changing the wording of the message as originally written. An effort to repeat the message in this case to ascertain if a mistake had been made in its transmission would have been an idle ceremony, because the message had not within a reasonable time after it was sent arrived at the office of its destination; consequently there was nothing for the receiving office to repeat back to the sending office; and when it did so arrive it was addressed to the proper place, and no mistake was at that office discoverable by inquiry there. Repeating a message is not made to guard against delay in its delivery, but to correct any error in its transmission. The very error in this case, substituting the word Normah for Norman, was the fact that prevented the message reaching its place of destination. If the sender had so desired to have repeated the message, he could not have done so, because the negligence of the appellant prevented the message from reaching its place of destination within a reasonable time after it was sent. He was not required to repeat a message that was not received. If he had repeated the message after it was received at the office of destination, he would have ascertained that it was received as originally written, and there would have been no error to correct.

The failure to repeat a message does not excuse the telegraph company from its negligent delay in transmitting and delivering it. Tel. Co. v. Short, 14 S. W. Rep., 649.

We find no reversible error in the record, and affirm the judgment. We have not undertaken to discuss all the questions raised by the assignments of error, although we have investigated them.

*Affirmed.*

Delivered May 31, 1893.