Western Union Telegraph Company v. H. C. McGown.

Decided April 11, 1906.

**1.—Cipher Message—Notice of Importance.**

If the telegraph company is informed by any means that a message is important it is liable for unnecessary delay in its transmission.

**2.—Presumption of Solvency.**

It was not necessary for plaintiff to prove that the party contracting for the cotton was solvent and would pay for the same.

**3.—Negligent Delay.**

If a message had been promptly sent from the receiving office it would probably have reached its destination before the wire got out of working order. No probable cause was shown for the wire being out of order. No effort was made to send the message over any other wire, nor was any notice given to the sender of the inability to transmit the message. Held, such negligence as to justify the verdict.

Appeal from the County Court of Burleson. Tried below before Hon. R. J. Alexander.

*Geo. H. Fearons* and *L. A. Hill,* for appellant.—The court erred in admitting over the objection and exception of the defendant the testimony of the plaintiff, H. C. McGown, interpreting the meaning of said telegram, or the meaning of the obscure parts of same, because there was no testimony that the defendant had been given any notice of such meaning or the importance of said telegram at the time of filing same in its Houston office. Daniel v. Western U. Tel. Co., 61 Texas, 453; Elliott v. Western U. Tel. Co., 75 Texas, 18; Houston, E. & W. T. Tel. Co. v. Davidson, 15 Texas Civ. App., 335; Primrose v. Western U. Tel. Co., 154 U. S., 33; Hadley v. Baxendale, 9 Exchequer, 341.

The court erred in not granting defendant a new trial because the uncontroverted evidence in this case shows that the defendant, or its agent at Houston, Texas, at the time of receiving said message for transmission, had no knowledge whatever of the meaning of said telegram which is shown upon its face to be a cipher or obscure message, and had to be interpreted by evidence so that the court and jury might know the meaning thereof, and there was no evidence adduced whatever that any notice was shown or given to the defendant Western Union Telegraph Company at its office at Houston, Texas, at the time of the receipt of said message for transmission, of the meaning of said message or of the importance of same, and no such damages were in contemplation of the parties to the contract, to wit, J. M. Dorrance & Co., and the defendant Western Union Telegraph Company at the time of entering into said contract.

The court erred in not granting defendant a new trial because the verdict of the jury is against the law and the evidence in this, that there was no evidence adduced that the said J. M. Dorrance & Co. could and would have accepted and paid for the cotton herein sued for if the plaintiff had replied and accepted their offer during the day of September 26, 1904, as alleged by plaintiff. Cumberland Tel. & Tel. Co. v. Brown, 55 S. W. Rep., 155.

The court erred in not granting defendant a new trial because the verdict of the jury is against the overwhelming weight and preponderance of the evidence in this, that all the evidence showed the defendant has used ordinary care in receipt and transmission of said message and that the only delay in the transmission of same was caused "by unavoidable interruption" in the working of its line or phenomena over which defendant had no control.

As to right to limit its liability: Western U. Tel. Co. v. Edsall, 63 Texas, 674; Western U. Tel. Co. v. Neill, 57 Texas, 283; Mitchell v. Western U. Tel. Co., 12 Texas Civ. App., 262.

Unavoidable delay in delivering telegram constitutes no breach of duty. Western U. Tel. Co. v. Stiles, 35 S. W. Rep., 76; Western U. Tel. Co. v. Cohen, 73 Ga., 522; White v. Western U. Tel. Co., 14 Fed. Rep., 710.

The court erred in not granting defendant a new trial because the uncontroverted testimony in this case shows that the said message was written upon one of defendant's message blanks and the sender thereof had agreed to certain conditions or stipulations limiting the liability of defendant which were printed upon the back of said message and among said conditions limiting its liability, is as follows: "Nor in any case for delays arising from unavoidable interruption in the working of its lines, or for error in cipher, or obscure messages," and the uncontroverted testimony in the case shows that this was a cipher or obscure message, and the overwhelming weight and preponderance of the testimony shows that defendant had used ordinary care in trying to transmit said message, and that defendant had no direct wire from Houston, Texas, to Caldwell, Texas, and that said message had to be sent by the way of Galveston, Texas; and that its only commercial wire extending from the town of Galveston, Texas, to Caldwell, Texas, by which said message had to be sent, was out of working order from 1:20 o'clock p. m. until the morning of September 27, and that the defendant had used diligence to try to transmit said message over the railroad wire which it could only use by courtesy when not engaged, and in use in sending railroad telegrams.

*McIver & Bowers,* for appellee.—Where a telegraph company receives a message, partly in cipher and partly interpreted, and which shows on its face that it is important, it is of itself sufficient notice to the company, and they are responsible for the actual damage caused by its failure to promptly transmit the message. Western U. Tel. Co. v. Edsall, 74 Texas, 329; Western U. Tel. Co. v. Adams, 75 Texas, 532; Western U. Tel. Co. v. Nagle, 11 Texas Civ. App., 541; Western U. Tel. Co. v. Birge-Forbes Co., 69 S. W. Rep., 181.

The court did not err in not granting appellant a new trial, because the uncontradicted testimony showed that the defendant was negligent in failing to notify J. M. Dorrance & Co., the sender of said message, that the line was unavoidably interrupted and that they could not transmit said message and the testimony shows that the message was received at Houston at 2:08 p. m. and not transmitted to the relay station at Galveston until 3:25 p. m. International & G. N. Ry. Co. v. Anderson, 3 Texas Civ. App., 11; Western U. Tel. Co. v. Birge-Forbes Co., 69 S. W. Rep., 181.

FLY, ASSOCIATE JUSTICE.—This is a suit for damages arising from the failure to deliver a message from Dorrance & Co., of Houston, Texas, to appellee at Caldwell, Texas. The suit arose in a Justice's Court and was appealed to the County Court. In each of the courts a judgment was rendered for appellee for $125.

The message sent by Dorrance & Co. to appellee was as follows: "Limits good to-day, acsent abroach basis landed." None of the message was cipher except the two words "ascent abroach" and the message as interpreted meant 'limits good to-day, 10½ cents basis landed for 100 bales landed at Houston." The message was received at Houston at 2:08 o'clock p. m., September 26, 1904, and was delivered to appellee about 9 o'clock a. m. on September 27, 1904. The message was sent to appellee to authorize him to buy 100 bales of cotton at a cost of 10½ cents a pound and he was entitled to any profit that might arise by his being able to buy the cotton for a less price. He would have realized a profit of $125 had the message been delivered to him on the afternoon of September 26.

The first complaint is that the court erred in allowing appellee to give an interpretation of the message. It was admitted by the operators at Galveston that they knew that the message was important, and it would not matter whether they knew the meaning of the words or not the telegraph company would be liable. It follows that the interpretation of the message could not have injured appellant. The first words of the message were intelligible to any one who handled messages for persons dealing in cotton, as the servants of appellant were doing every day for Dorrance & Co. They sent messages daily to appellee, and the operators must have known that the message was important because the limit was confined to the day on which the message was sent. However that may be, the operators at the Galveston office, to which the message was sent by the Houston office, knew the importance of the message, and they either got that information from the Houston office, or the language of the message gave the information. They knew it.

The evidence of Dorrance was that his firm agreed through the telegram that they would pay appellee 10½ cents a pound for 100 bales of cotton and it was not necessary to prove that they were solvent and would have paid for the cotton. They had been in the habit of dealing with appellee, and the presumption would prevail that they would have paid for the 100 bales. The cotton was refused by Dorrance & Co., because when tendered on September 27, the price had declined. That was the only reason given for refusing it.

The message from Dorrance & Co. to appellee was delivered to appellant at Houston at 2:08 p. m. and the route to Caldwell was by Galveston, yet the message was held in Houston for one hour and ten minutes before any effort was made to send it to its destination. There is evidence that tends to show that if the message had been sent to Galveston promptly no difficulty would have been experienced in getting it to Caldwell before 3 o'clock. Farnsworth, the telegraph operator at Caldwell, testified that he first noticed that something was the matter with the line about 3 o'clock p. m. He further stated that "on said date all the instruments in said office at Caldwell were in good working order and were all modern instruments and wire number 103, which

got out of order that day, had been in good working order up to the time I noticed it." A wire known as "No. 9," which was in good working order, also ran into the office, and could have been used by permission of the train dispatcher. There is no proof that such permission was asked. G. A. Clark swore that several messages had been sent to Caldwell on September 26, and that the trouble after 3:25 o'clock p. m. "was atmospheric, wire swing, or grounded."

The record fails to indicate such a case of the interference of the "act of God" as would require the withdrawal of the issue from the jury. It was not proved that the wind was high, that it rained, or that there were any electrical disturbances, but simply that the wires would not work, and this court is asked to conclude from that fact that a *vis major* had intervened and interfered with the wires, and to reverse the judgment on that ground. The court instructed the jury that if they believed that the delay in the transmission of the message "was occasioned by natural causes arising in connection with the wires of defendant, causes for which it was not responsible and over which it had no control," they should find for defendant. The same instruction was repeated in a special charge asked by appellant and given by the court. The jury might well have found that the message could have been sent if it had been dispatched promptly from the Houston office, or if appellant's employes knew all day about the condition of the line, as some of them swore, that Dorrance & Co. should have been notified. They might then have used the telephone wire which appellee used the next morning in communicating with them.

If appellant may, as it contends, limit its liability in cases where delays arise from unavoidable circumstances or for errors in cipher or obscure messages, still the jury was justified in finding that no such state of facts arose in this case. There was no error in the message, but it was simply a question of delay and the jury was justified in finding that it was not excused by the facts. The judgment is affirmed.

*Affirmed.*