WESTERN UNION TELEGRAPH COMPANY v. WEBB.

Opinion delivered February 13, 1911.

1. TELEGRAPH COMPANY—RULE AS TO FREE DELIVERY LIMIT.—A rule adopted by a telegraph company as to the limit for free delivery of messages is made for the benefit of the company, and may be waived by it. (Page 90.)

2. SAME—NEGLIGENCE IN DELIVERY OF TELEGRAM.—Evidence that a telegraph company accepted a message to be transmitted to one who lived beyond its free delivery limits, and that its custom had been to send

such messages by some one who resided near the addressee, and that if the company had exercised due care it could have in this way delivered the message to the addressee in time to enable him to attend his mother's funeral, is sufficient to sustain a finding of negligence. (Page 90.)

3. INSTRUCTION—WHEN SPECIFIC OBJECTION NECESSARY.—Objection to the phraseology of an instruction should be specific. (Page 92.)

4. DAMAGES—MENTAL SUFFERING—EXCESSIVENESS.—For failure to deliver a telegram, which, if promptly delivered, would have apprised the addressee of his mother's death and have enabled him to attend the funeral, an award of $625 was not excessive where the addressee entertained great affection for his mother, and was deprived of the privilege of being present and assisting in burying her. (Page 92.)

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; affirmed.

*George H. Fearons, Trimble, Robinson & Trimble* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. Since the addressees were not at Pioneer, the appellant could not have delivered the message to them there, and it owed appellee no duty to search for them at Floyd or other places. 95 Tex. 420, 67 S. W. 768; 22 S. W. 532; 67 Kan. 729; 107 Ky. 663; 81 Mo. App. 223.

2. Addressing the telegram to his brothers at Pioneer without making arrangements for sending the message from that place to Floyd, or notifying appellant of their home address, was such negligence as, to say the least of it, contributed to appellee's alleged damage. 81 Fed. 676; 60 S. W. 687; 103 Ind. 294.

3. The delay in delivering the message was not the proximate cause of appellee's failure to attend the funeral, but rather either the lateness of the train or his brother's want of care in proceeding with the funeral, under the expectation that appellee would be on the first train, and neglecting to inquire whether the train was on time or late.

4. The argument of counsel for appellee to the effect that appellant had "manufactured evidence which it has introduced here" which, upon appellant's objection, was excluded from consideration by the jury, was followed by counsel's statement, "I made that statement; yes, sir, and I stand upon the statement," and was *not* withdrawn by the court from the jury, nor the coun-

sel reprimanded, was prejudicial and reversible error.   75 Ark. 577; 70 Ark. 305; 71 Ark. 427; 76 Ark. 366.

*George M. Chapline, Palmer Danaher,* and *Vaughan & Akers,* for appellee.

1.   The instructions of the court submitted to the jury two inconsistent theories, the one, on the part of appellant, that the delivery by Powers to B. K. Webb was a discharge of appellant's duty to exercise reasonable diligence to deliver the message to the addressee, and the other, on the part of appellee, that the telegram did not reach Pioneer at all during the forenoon of December 5, but was negligently delayed until at least 12:15 P. M.  The verdict of the jury settles the case in favor of the latter theory.   See statement of facts on first appeal. 94 Ark. 350.

2.   Had the message been promptly delivered, it is undisputed that the funeral would have been postponed to await appellee's arrival.   Appellant's contention that the failure to deliver was not the proximate cause of plaintiff's being deprived of this privilege is fully refuted by this court's opinion in the Griffin case, 92 Ark. 219, where the facts are almost identical with those of this case.

3.   A general objection to an instruction which is so worded as to be susceptible of misconstruction by the jury is of no avail. It must be met by specific objection pointing out its defects.   65 Ark. 255; 66 Ark. 264; *Id.* 46; 76 Ark. 468; 78 Ark. 71; 78 Ark. 156; 82 Ark. 391; *Id.* 555; 84 Ark. 81; 87 Ark. 396; 89 Ark. 537; *Id.* 577; 90 Ark. 231; 93 Ark. 595; *Id.* 215.

4.   As to whether or not this court will reverse on account of improper argument necessarily depends "upon the nature of the argument, *the circumstances under which it was made,* the action of the trial court, and the *probable effect of the argument upon the verdict.*"   The argument of appellee's counsel was not prejudicial.   71 Ark. 434-5; 132 S. W. 648; 65 Ark. 475; 76 Ark. 39; *Id.* 286; 74 Ark. 356; *Id.* 298; *Id.* 489; *Id.* 604; 72 Ark. 614; 58 Ark. 473-493; 75 Ark. 67; *Id.* 246; *Id.* 347; 91 Ark. 576.

HART, J.   The opinion in a former appeal of this case is reported in 94 Ark. 350 *(Western Union Tel. Co.* v. *Webb).* After the mandate of this court was filed in the circuit court, the complaint was amended, and the case was again tried before a

jury, which returned a verdict for $625 in favor of the plaintiff. Sydney B. Webb. The defendant, Western Union Telegraph Company, by this appeal seeks to reverse the judgment rendered upon the verdict.

Reference is made to the opinion in the former appeal for a statement of the case. Additional facts will be stated or referred to in this opinion.

It is strongly urged by counsel for appellant that the verdict is not warranted by the evidence. They insist that the company owed no duty to deliver the message outside of its free delivery limits at Pioneer, and that because the addressee of the telegram resided outside of those limits and made no inquiry for the message at Pioneer, the negligence of appellant in transmitting and delivering the message, if established, was not the proximate cause of the injury. It is true that this is the general rule, as announced in *King* v. *Western Union Telegraph Co.,* 89 Ark. 402, but a particular state of facts may make an exception to the rule. This is recognized in the case of *Arkansas & La. Ry. Co.* v. *Stroude,* 82 Ark. 17. In that case the court said: "It was a question for the jury, under the evidence, which we have fully set forth in the statement, as to whether or not appellant exercised ordinary care in delivering the message to appellee. The court properly instructed the jury that the fact that appellee lived beyond the limits of the town at the time the message was received by appellant at Nashville could not avail appellant as a defense, provided appellant by the exercise of ordinary diligence could have delivered the message to the sendee within its delivery limits, *i. e.,* the corporate limits of the town of Nashville."

The operator at Pioneer testified that he delivered the message in question to B. K. Webb, a cousin of Sidney B. and Jesse Webb, about the middle of the forenoon of December 5, 1908; but the jury might have found against appellant on this issue; for it was shown by the testimony of appellee that at about 12 o'clock noon of that day the message was at the relay station of Eudora, and had not yet been transmitted to Pioneer. The operator at Pioneer admitted that he received the message from Eudora, a relay station. Then at the funeral in the afternoon B. K. Webb was present, and there was general comment among those present about the nonarrival of appellee, and B. K. Webb

said nothing about having received the message in question. Appellee met his brother coming from the funeral, and after they all reached Floyd, just after dark, the message was delivered to them by one Redmond. From these facts and circumstances the jury might have found that the operator was mistaken when he said he delivered the message to B. K. Webb, about the middle of that forenoon. Now, it will be noted that rules prescribing limits for the delivery of telegrams free of extra charge are made by the telegraph company, and are made for its benefit. If it sees fit, it may waive this rule, or abrogate or change it in whole or in part. Powers, the operator of the company at Pioneer, said that it was a small place of about 500 inhabitants. Floyd was about five miles distant, and had no telegraph station. The testimony of appellee showed that Floyd was only three or four miles from Pioneer; and was off the railroad. We quote from Powers's testimony, as brought out by appellant, as follows: "Q. Under the rules and regulations of that office were you required to deliver messages to any one living in Floyd when they were sent to Pioneer? A. No, sir. Q. What was the custom with regard to that? A. It was the custom to hand them over to residents of Floyd that I usually saw or else to deliver them to Ross Brothers' store, at which point most of the residents of Floyd called when they were in Pioneer. Q. This was the request of the people of Floyd? A. Yes, sir."

Appellee says Powers was slightly acquainted with him. Jesse Webb testified that he had lived at Floyd all his life, and was well acquainted with Powers. He further stated that he was well known by both the old residents of Pioneer and Floyd. As above stated, appellee stated that the message was delivered at Floyd about dark after the burial, by one Redmond. The jury by its verdict found that appellant negligently delayed the message at its relay station, Eudora. It can not be said as a matter of law that, had this negligence not occurred, the addressee of the telegram would not have received it in time to have delayed the burial until the arrival of appellee because he did not send to Pioneer for the message. It was a question for the jury to say, under the facts and circumstances stated above, if appellant's operator at Pioneer had observed the usual custom in regard to messages received at Pioneer for residents of Floyd,

whether or not Jesse Webb would have received the message in time to have delayed the burial. That is to say, the jury might have found, under the evidence detailed above, that if the operator had made inquiry, had he received the message in the morning of the 5th inst., he would have found at Pioneer some resident of Floyd who would have carried the message to Jesse Webb at Floyd in time for him to have postponed the burial until the arrival of his brother. *Louisiana & N. W. Rd. Co.* v. *Reeves,* 95 Ark. 214. See also *Rosser* v. *Western Union Tel. Co.,* 130 N. C. 251; *Western Union Tel. Co.* v. *Robinson* (Tenn.), 34 L. R. A. 431; *Western Union Tel. Co.* v. *Cain* (Tex. Civ. App) 40 S. W. 624. It will be noted that, while the burial was not delayed until the train on which appellee would have come arrived, the train was several hours late, and Jesse Webb did not expect appellee because he had not received a message from him, as he expected to do. He testified that he waited for the message until just in time to bury their mother before dark. He said that her body was embalmed, and was buried in a metal casket; that he certainly would have waited for his brother before burying their mother, had he received the message in question.

2. Counsel for appellant next urge us to reverse the judgment on account of certain instructions given. We do not deem it necessary to set out the instructions. It is sufficient to say that the objections came squarely within the rule laid down in *St. Louis, I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark. 255, where the court held (quoting from syllabus): "The giving of an instruction to the effect that it is the duty of a railroad company to keep its station platform in safe condition for the use of passengers is not cause for reversal where no specific objection was taken to the court's failure to limit or explain the meaning of the term safe."

3. Counsel for appellant also ask that the judgment be reversed because of certain remarks made by counsel for appellee in his address to the jury. Upon objection being made to the remarks, the court withdrew them from the consideration of the jury, and we think his action in that regard cured any prejudice that might have resulted to appellant.

4. We now come to the question of the verdict being excessive. It is shown that great affection existed between appel-

lee and his mother, and it is certain that as soon as he learned of her death he made every effort to be present and assist in burying her. It was his privilege, if not his duty, to bestow this last tribute of love and respect. He was denied this right, as shown by the verdict, on account of the negligence of appellant. While it is impossible to tell how great his suffering was on that account, yet it was the duty of the jury to measure it in dollars and cents, and we can not under the evidence say that it was overestimated.

The judgment will be affirmed.

KIRBY, J., dissents.