# CASES DETERMINED

## IN THE

# SUPREME COURT OF ARKANSAS

WESTERN UNION TELEGRAPH COMPANY *v.* BICKERSTAFF.

### Opinion delivered June 19, 1911.

1. TELEGRAPH COMPANIES—DUTY TO TRANSMIT MESSAGES PROMPTLY.—
   A telegraph company does not insure the prompt transmission of messages; it is required to exercise ordinary care, and is liable only for a failure to transmit as promptly as is reasonably practicable under all the existing circumstances. (Page 4.)

2. SAME—LIABILITY FOR DELAY—BURDEN OF PROOF.—A telegraph company is required to exercise ordinary care both in preventing wire trouble and in repairing same after it occurs; and where the telegraph company relies upon some trouble with its wires as an excuse for not promptly transmitting a message, it devolves upon it to show that such trouble was not due to its fault. (Page 5.)

3. SAME—A telegraph company cannot rely upon the defense that it could not transmit a message on account of trouble with its wires, even though caused through no fault of its own, if the existence of the wire trouble was known to it when the message was accepted, and it failed to inform the sender of its inability to transmit the message promptly. (Page 5.)

4. SAME—NEGLIGENCE—PROXIMATE CAUSE.—Where a telegraph company was unable, by reason of wire trouble, to transmit a message to a husband announcing the grave illness of his wife, but neglected to inform the sender of the message of such trouble, the jury may reasonably infer that if the sender had been notified thereof he would have employed other means of notifying the husband, and may find that the proximate cause of the damage sustained by the husband by reason of his failure to reach his wife before her death was the negligence of the telegraph company in failing to give such information to the sender. (Page 6.)

5. DAMAGES—MENTAL SUFFERING.—While it is difficult to measure mental suffering in money, juries have not an unlimited discretion in this respect. (Page 8.)

Appeal from Desha Circuit Court; *Antonio B. Grace*, Judge; affirmed with modification.

*Geo. H. Fearons, N. B. Scott, Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. Due diligence was used, and the delay was not occasioned by any neglect. The claim that if appellant had notified appellee of the fact that the lines were not working the damage would have been averted is not borne out by the testimony. The result of using other means of communication is too remote and speculative. 91 S. W. 257; 54 *Id.* 825; 26 *Id.* 490; 27 *Id.* 52; 90 Ky. 265; 30 S. W. 880; 78 Me. 97; 79 Miss. 58; 94 Ga. 202; 39 Kans. 580; 18 Pac. 719; 30 Oh. St. 555; 27 Am. St. 485. The peremptory instruction should have been granted.

2. The verdict is excessive.

3. The argument of plaintiff's attorney was improper and prejudicial. 70 Ark. 305; 74 *Id.* 210.

*X. O. Pindall,* for appellee.

1. A telegraph company receiving a message is bound to notify the sender if the lines are out of order or obstructed so that the message cannot be sent within a reasonable time, so as to give him an opportunity to use other means, and it is liable for any damages caused by the non-performance of its obligation. 93 Ark. 415; 129 Fed. 318; Kirby's Digest, § 7947; 64 Ark. 538; 77 *Id.* 109.

2. The contingencies were not too remote nor speculative. 102 S. W. 840; 98 Ark. 87; 190 U. S. 540; 158 *Id.* 334; 154 *Id.* 1; 149 *Id.* 260.

3. The question whether the damage was the proximate cause or not is for the jury. 22 S. W. 656; 3 Tex. Law App. 460; 33 S. W. 742; 57 Tex. 647; 54 S. W. 230; 90 S. W. 677; 60 S. W. 491; 27 E. Enc. 1035; 83 Fed. 962; 60 S. C. 201; 72 S. W. 800.

4. A message relative to sickness is sufficient to charge the company with notice. 87 Ark. 304; *Id.* 506; 82 *Id.* 527; 129 Fed. 318.

5. The statement of attorney for plaintiff was expunged, and no injury was done. 98 Ark. 87.

6. The verdict is not excessive. Kirby's Dig., § 7947.

FRAUENTHAL, J. This was an action to recover damages for mental anguish which appellee alleged he sustained by reason of the negligence of appellant in the transmission of a

telegram to him announcing the grave illness of his wife. The appellee resided at Watson, Arkansas, which is about 72 miles distant from the city of Helena, between which places there was railroad and telegraph connection. About one week prior to October 19, 1910, appellee took his wife to Helena for medical treatment and placed her in a hospital under the care of Dr. Rightor. He then left for his home, requesting the physician to telegraph him if she got worse; and he also told him that he could reach him by telephone, but telegraphing was preferable, and this the physician agreed to do.

On October 19, 1910, at 7:30 P. M., Dr. Rightor delivered to the appellant at its office at Helena for immediate transmission a telegram addressed to appellee at Watson, reading substantially as follows: "Mrs. Bickerstaff not doing well at all; you had better come up tomorrow," and paid for same. It appears from the testimony introduced on behalf of the appellant that at the time this message was received its wires to Watson were down, and on that account it could not be promptly transmitted. The testimony tended to prove that the wires were down and out of order at 1:55 P. M., of October 19, and continued in that condition until about 11 o'clock A. M. of October 20, when they were repaired, and the message was then sent from Helena at 11:20 A. M. of that day, and was received by the operator at Watson before the noon hour. The only regular trains running from Watson to Helena were a passenger train, which left Watson at 7:30 A. M. and arrived at Helena at 10:55 A. M. of the same day, and a local freight, which left Watson at 8:30 A. M. and arrived at Helena at 5 P. M.

The appellee had left his home on October 19 and gone a few miles distant, and remained overnight, but he left instructions with an employee at his home to send him any message that might come to him, immediately upon its receipt. He returned on October 20, 1910, about 5 o'clock P. M., when he received the telegram, and, catching a freight train passing about nine o'clock that night, he proceeded to Helena, where he arrived on the early morning of October 21, 1910. His wife died about midnight of October 20, 1910.

There was a sharp conflict in the testimony as to whether or not the operator at Helena informed the sender of the tele-

gram upon its receipt that the wires were down, and on that account it could not be promptly transmitted. We think, however, that there was some testimony which sustained the finding of the jury that this was not done. The testimony on the part of the appellee tended further to prove that there was a telephone connection between Helena and Medford, which is about ten miles distant from Watson, and that telephone messages were sent to Watson from Helena by way of Medford; that a telephone message would be sent, according to custom, from Medford by private wire to Red Fork, which was a few miles from Watson, and would be sent from this latter place to Watson by messenger. Upon a trial of the case the jury returned a verdict in favor of appellee for $2,000 damages, and from the judgment rendered thereon this appeal is prosecuted.

The court instructed the jury that there were two acts of negligence charged against the appellant upon which its liability was predicated; one, that the appellant negligently failed to promptly transmit and deliver the above telegram, and the other, that it negligently failed to inform the sender upon its receipt that the wires were down, and that it could not be promptly sent on that account.

Relative to the first act of negligence, the court instructed the jury in substance that the appellant, as a telegraph company, was not an insurer of the prompt transmission and delivery of messages entrusted to its care, but was bound to use reasonable care and diligence to effect such transmission and delivery. If the wires connecting Helena and Watson were down and not in working order at the time the message was received at Helena, and continued in that condition until after the train for Helena had left Watson, and if this condition of the wires was not due to any negligence upon the part of the defendant, and by the use of reasonable care and diligence the defendant could not repair said wires and put them in condition for use in time to transmit and deliver the message before said train had left Watson on the morning of October 20, then the failure to transmit the message was not an act of negligence making defendant liable for damages therefor; otherwise, it was.

It is urged that there was no evidence upon which to base this instruction. When a telegraph company receives a message

for transmission, it then becomes its duty to send it promptly where the message on its face shows the necessity for prompt action. But the telegraph company does not insure the prompt transmission of any message. The extent of the obligation which it assumes, and the duty imposed upon it, is only to exercise ordinary care and diligence, and it is only liable for a failure to transmit as promptly as is reasonably practicable under all the existing circumstances. It is not responsible for delays due to causes over which ithas no control, and against which it could not guard by the exercise of ordinary care, foresight and diligence. But it will not be excused when the cause of the delay was due to its own negligence. This negligence may arise either where the trouble was caused originally by it, or where it could have been repaired in due time by the exercise of ordinary diligence. In other words, the law imposes upon the telegraph company the duty to exercise ordinary care and diligence, both in preventing any wire trouble and in repairing same promptly after it occurs. Where the telegraph company relies upon some trouble with its wires as an excuse for not promptly transmitting a message, it devolves upon the company to show that it was not due to any fault of its own. *Tinsel* v. *W. U. Tel. Co.*, 72 S. C. 350; *Western Union Tel. Co.* v. *McGowan*, (Tex. Civ. App.) 93 S. W. 710; *Western Union Tel. Co.* v. *Scircle*, 103 Ind. 227.

The testimony in the case at bar tends to prove that the wires were torn down at a point where they crossed the Illinois Central railroad tracks in Helena at the levee by a machine called a "clam shell" which was loading dirt, and that this wire trouble was learned by the appellant at or before 1:55 P. M., October 19, 1910, and that the wires were not repaired until 11 o'clock A. M., of the following day. Upon an examination of the testimony, we are of the opinion that there was evidence from which the jury were warranted in finding that the appellant failed to show that it had exercised ordinary diligence in repairing these wires after the discovery of trouble with the wire, and also that, if such ordinary care and diligence had been exercised, the exact trouble could have been located and the wires could have been repaired and the message transmitted in time for it to have reached the appellant so that he could have left Watson at 7:30 A. M., on the 20th of October

and reached the bedside of his wife prior to her death.

As to the second act of negligence attributed to appellant, the court instructed the jury in substance that the appellee must prove that at the time of receiving the message the appellant's operator did not notify the sender of the fact that the lines were not working to Watson, and that there would be a delay in sending the message to plaintiff by reason thereof; also, that there were other means of communication between Helena and Watson by which the message could have been sent, and that it would probably have been received by appellee in time for him to have taken passage on the train leaving Watson on the morning of October 20th, and have reached the bedside of his wife prior to her death; and that the sender could and would have used such other means of sending the message if he had been so notified by the operator. It was the duty of appellant's operator, when he received the message for immediate transmission, to have informed Dr. Rightor that it could not be sent promptly because of the wire trouble. By giving him this information it would have afforded him an opportunity to have sent the message by other means. A telegraph company cannot rely upon the defense that it could not transmit a message on account of trouble with its wires, even though caused through no fault of its own, if the existence of the trouble was known to it when it accepted the message, and it failed to inform the sender of its inability to transmit it promptly on that account. In the case of *Western Union Tel. Co.* v. *Harris*, 91 Ark. 602, this court approved the following rule in regard to this question: "If a telegraph company is unable, through a disarrangement of its lines or other cause, to do what it makes a business of doing, it must inform those who wish to employ it of the fact, and thus acquaint them with the advantage of employing other means." In failing, therefore, to inform Dr. Rightor, at the time the message was received by it for transmission, that it could not be promptly sent because the wires were down, the appellant was guilty of negligence rendering it liable for the damages caused thereby.

But it is earnestly urged that the damages claimed are not the proximate result of the failure to give this information. This contention is based upon the ground that the probabilities that, upon receiving such information, the sender would

have used other means for sending the message, and could, by the use of such other means, have sent same to appellant in time for him to have reached his wife before her death, were too many and too remote upon which to base a recovery. In an action founded simply upon negligence, the injury must be the natural and probable result of the wrongful act complained of; but this is ordinarily a question of fact to be determined by the jury, and especially is this the case where the facts are susceptible of various inferences deducible therefrom. Thus, it had been held that a failure to complete a trade on account of the failure to hear from a partner in reply to a telegram sent for advice properly submitted to the jury the question of proximate cause of the damage arising from the failure to deliver such message. *Wallingford* v. *Tel. Co.*, 60 S. C. 201.

It has been frequently held that a jury might reasonably infer that an answer would be made to a telegram notifying the addressee of the death of a near relative, and also that the addressee would act thereon. *Western Union Tel. Co.* v. *Caldwell* (Ky.) 102 S. W. 840; *Western Union Tel. Co.* v. *Lyman* (Tex. Civ. App.), 22 S. W. 656; *Western Union Tel. Co.* v. *Morris*, 83 Fed. 992; 27 Am. & Eng. Enc. Law, 1035; 37 Cyc. 1746.

In the case of *Western Union Tel. Co.* v. *Webb*, 98 Ark. 87, this court said: "It cannot be said as a matter of law that, had this negligence not occurred, the addressee of the telegram would not have received it in time to have delayed the burial until the arrival of the appellee because he did not send to Pioneer for the message. * * * * The jury might have found under the evidence detailed above that, if the operator had made inquiry, had he received the message on the morning of the 5th, he would have found at Pioneer some resident of Floyd who would have carried the message to Jesse Webb at Floyd, who would have arrived in time to have attended the burial of his brother."

In the case at bar we are of the opinion that, from the facts and circumstances adduced in evidence, the jury could reasonably have inferred, and were warranted in finding, that if the operator had informed Dr. Rightor that the message could not be promptly sent because the wires were down, he

would have used the telephone to have sent the message, and that it could and probably would have been delivered to appellee in time for him to have reached the bedside of his wife before her death. Under the circumstances, the proximate cause of the damage sustained by appellee by reason of his failure to reach his wife before her death was the negligence of the appellant in failing to give the above information to Dr. Rightor.

It is insisted by counsel for appellant that the damages returned in this case are excessive. It is well settled that the damages which are returnable for mental anguish must result from the suffering caused proximately by the negligence complained of; in this case the suffering of appellee resulting solely from the failure to reach his wife before her death. There can be no recovery for any mental anguish suffered by him resulting from the death of his wife. That would have inevitably occurred, even if he had reached her bedside before her death. In the case at bar the appellee took his wife, who was dangerously ill, to the hospital for treatment about one week before her death. He was then told by the attending physician that her condition was grave, although there was a chance of recovery. By remaining at Helena he could have seen his wife every day. He did not, however, remain at that city, but went to his home, which was 72 miles distant, to attend to business matters. While his business affairs were no doubt pressing, and fully justified his leaving his wife in the care of those to whom he had intrusted her, yet it appears from the testimony that he did allow his business affairs to overcome his desire to be with and see his wife every day. In his complaint he laid his damages at $2,000, and recovered the full amount sued for.

It is always difficult to measure in money a sentiment or the suffering of an anguished mind; but in cases of this kind the courts are called upon to do this, and it will not do to say that, because these matters cannot be definitely estimated, any sum, without limit, may be assessed as a measurement of such damage.

In the case of *Western Union Tel. Co.* v. *Weniski,* 84 Ark. 457, this court said: "The element of mental anguish allowed by the statute in the assessment of damages for non-delivery of a telegram is so indeterminate in its nature that it must be left to some extent to the trial jury, but there is a limit

to the power and discretion of the jury in this respect, and it becomes our duty to set aside an assessment which is palpably excessive."

In the case of *Western Union Tel. Co.* v. *Blackmer,* 82 Ark. 526, a daughter recovered one thousand dollars from the telegraph company for the failure to reach her mother's bedside until after her death, on account of its negligence in transmitting the message informing her of her mother's serious illness. In that case the court said : "No safe and satisfactory rule can be laid down for the assessment of damages in cases like this, but each particular case must be decided upon its own merits. In many cases similar to this courts have held verdicts for damages not exceeding one thousand dollars were not excessive." See also *Western Union Tel. Co.* v. *Mellon,* 96 Tenn. 725; *Western Union Tel. Co.* v. *Bowles* (Tex. Civ. App.), 76 S. W. 456.

Ordinarily the amount of damages growing out of mental anguish is left to the determination of the jury. Yet it is also the duty of the court to see that these damages are sustained by the facts and circumstances adduced in evidence in the case, and, where the amount returned by the jury is excessive, to review its assessment. Under the facts and circumstances of this case, we are of the opinion that one thousand dollars would be a full compensation for the damages sustained by the appellee.

The judgment will therefore be modified by reducing the amount of damages to one thousand dollars, and as thus modified it will be affirmed.