CASE 27—ACTION BY FANNY MATTHEWS AGAINST THE WESTERN UNION TELEGRAPH CO., TO RECOVER DAMAGES FOR DELAY IN DELIVERING A MESSAGE.—APRIL 24.

# Western Union Telegraph Co. v. Matthews.

APPEAL FROM SHELBY CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

TELEGRAPHS—DELAY IN DELIVERING MESSAGE ANNOUNCING SICKNESS —FAILURE TO TAKE FIRST TRAIN—INSTRUCTION AS TO CONTRIBUTORY NEGLIGENCE—SPECIAL CONTRACT TO DELIVER MESSAGE IN COUNTRY.

Held:   1. In an action against a telegraph company to recover damages for delay in delivering a message to plaintiff announcing the sickness of her father, whereby she was prevented from reaching him before his death, evidence of the sickness of plaintiff's child was admissible as an excuse for her failure to take the first train after she received the message, but not as an excuse for her failure to take the first train from a connecting point after she had begun her journey.

2. It was not competent for plaintiff to show, as an excuse for her failure to take the first train from a connecting point, that she

Western Union Telegraph Company v. Matthews.

did not know that a train left at that time, as it was her duty to inform herself as to the running of trains, and to take the first one that she could reasonably take.

3. It was the duty of plaintiff to make the injury from defendant's negligence as small as possible, and, if she failed, after receiving the message, to exercise that care to reach her father before his death or unconsciousness that a person of ordinary prudence would have used under similar circumstances, and such failure contributed directly and proximately to the injury, she can not recover; and the court should have so instructed the jury, instead of instructing them that plaintiff could not recover if, "by reason" of such negligence on her part, she was prevented from arriving at her father's bedside before his death or unconsciousness, as the contributory negligence of plaintiff may deprive her of the right to recover, though it was not the sole cause of the injury.

4. While defendant was under no obligation, under its rules, to deliver the message to plaintiff four miles in the country, yet, having undertaken for a consideration to do so, it was bound by its undertaking, though it may have been required to pay out more than the consideration received to employ a runner to make the special delivery.

5. The making of such a special contract was within the apparent scope of the authority of defendant's agent, and the court properly excluded evidence attempting to restrict the liability to a transaction between the sender and the agent personally.

RICHARDS & RONALD, ATTORNEYS FOR APPELLANT.

GEORGE H. FEARONS, OF COUNSEL.

The contention of the appellant is:

1. Where there is evidence to support a plea of contributory negligence, an instruction to find for the plaintiff unless her negligence caused the injury, is erroneous, as it is a sufficient defense that her negligence *contributed* to the injury.

2. Where a daughter receives a message in time to reach her sick father twenty-seven hours before his death, and while he is still conscious, but delays her journey on account of a sick child she is leaving, she can not recover damages for mental anguish caused by not seeing her father before his death, even though the telegraph company had failed to deliver the message promptly.

3. Where a message has been transmitted to its original destination, and thereafter a contract was made at the request of the sender with a third party to deliver it four and one-half miles in

the country to which contract the telegraph company was not
a party, and was to receive none of the compensation, such com-
pany is not liable for the negligence, if any, in performing the
undertaking to deliver in the country.

### AUTHORITIES CITED.

Central Pass R. Co. v. Stephens, 14 R., 803; L. & N. R. R. Co.
v. Clark, 20 R., 1375; Avery v. Mack, 14 R., 814; Speed v. Car-
penter, 14 R., 271; Gray on Communication by Telegraph, sec.
100; Joyce on Electricity, sec. 972; Western Union v. Mellon,.
33 S. W. (Tex.) 727; Western Union v. Briscoe, 47 N. E. (Ind.)
473; Western Union v. Jeans, 29 S. W., 1130; Western Union
ads Marr, 85, Tenn., 550.

WILLIS & WILLIS, ATTORNEYS FOR APPELLEE.

On a former trial of this case in which the plaintiff recovered
a judgment for $400 in damages this court approved the in-
structions then given which are exactly the same given on this.
trial, therefore there can be no question that the jury was in-
structed upon the law of the case as fixed by this court.

When the case was returned to the lower court the appel-
lant filed an amended answer pleading contributory negligence,.
and upon this issue the court gave intsruction No. 6, substan-
tially as written by counsel for appellant, and these were all
the instructions given or asked except such as had been offered
and refused on the former trial, all of which had been deter-
mined by the former opinion.

The appellant having had two fair trials both in accord with
the law should be satisfied. See Western Union Tel. Co. v. Mat-
thews, 21 Ky. Law Rep., 1405.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

On the afternoon of November 12, 1896, appellee's brother
lodged at appellant's office in Springfield, Ky., a telegram,
to be transmitted and delivered to appellee at Shelbyville,
Ky., stating: "Come home; father very sick." The message
was promptly transmitted to Shelbyville. The agent there,
upon inquiry, learned that appellee lived some four and one-
half miles in the country. The message was directed to
the care of James A. McGaughey, with whom appellee was
living. Upon learning that appellee lived out of the town,

which was beyond appellant's limit for delivering messages, notice was given the sender the same afternoon, to-wit, November 12, apprising him that if he would guaranty the additional expense, which was estimated at $1.50, the message would be transmitted. The sender did not communicate with the Springfield office, however, until the next afternoon. He then told the agent that he would guaranty the payment of the charges. This was wired to the Shelbyville office at once. The Shelbyville office, not having heard anything from the Springfield office on the afternoon of the 12th, nor the morning of the 13th, had left the message at the livery stable of Long & Weber, where Mr. McGaughey stopped whenever in town. Upon being notified from Springfield on the afternoon of the 13th of the guaranty of additional charges, the Shelbyville agent sent to Long & Weber, and was informed that the message had been delivered to McGaughey. They learned no better until the following afternoon, when some one from the livery stable brought the message to the Shelbyville agent, who immediately employed a runner to deliver the message in the country, which was done. It was delivered at 7:30 o'clock Saturday evening. This was too late for any train leaving Shelbyville for Louisville that night. There were two trains leaving for Louisville in the morning, one at 6 o'clock over the Louisville Southern, and one at 10 o'clock over the Chesapeake & Ohio. Had appellee taken the one leaving Shelbyville at 6 o'clock, she would have arrived at Louisville in time to have made connection with the morning train for Lebanon, which was about nine miles by turnpike from her father's residence. There were no Sunday trains (the 14th was on Sunday) to Springfield. Appellee took the Chesapeake & Ohio train on Sunday morning, which placed her in Louisville too late for the Lebanon train. She remained

in Louisville with a relation until the following afternoon. There were two trains leaving Louisville daily, except Sunday, to Springfield, one at 8:30 in the morning, and the other in the afternoon. Instead of taking the morning train, appellee first sought to learn, by telegraphing a friend at Springfield, as to her father's condition. She did not hear in time to take the morning train. When she arrived Monday afternoon he was dead, having died about 3 o'clock in the afternoon. In this suit for damages she was awarded a verdict of $500.

Appellee was permitted to prove that her reason for not taking the first train Sunday morning, and her reason for staying in Louisville until she could hear further by another telegram Monday morning, was because of the sickness of a young child she had left at home and was unable to take. We are of opinion that this evidence, so far as it went to explain why she did not take the first train from Shelbyville, was relevant, but that it was not an excuse for her not having continued her journey when begun; at least so far as affecting the liability of the company is concerned.

The following evidence given by appellee was also objected to: "Q. 37. State whether or not you know anything about any trains in Lebanon? A. No, sir; I did not known anything about the trains going from Louisville to Lebanon. Q. 38. State whether or not you knew anything about the trains leaving Louisville for Lebanon at 8 o'clock? A. No, sir; I did not." We are of opinion that this evidence was irrelevant. It was the duty of appellee to know, or to inform herself, as to the running of the trains, and to have taken the first one that she could within reason, or her failure to do so would have been contributory negligence.

The following testimony of same witness was also objected to: "Q. 44. What did you do the next morning?" A.

I got up and went to the Tenth street depot about six o'clock and sent a telegram to Father Hennessy to know how father was. . . . Q. 48. State whether or not you got an answer to that dispatch? A. No, sir. . . . Q. 51. Why didn't you go on that? A. I sent the telegram and wanted to see if I could hear from my father, and if he was dead go back to my sick child. Q. 52. What did you do when you failed to get that dispatch; what did you do? A. Sent a telephone to Mr. Russell. Q. 53. What information did you get from Mr. Russell? A. Father was very low." We are of opinion that all of this was irrelevant, for the reasons above given. It should have been excluded.

Contributory negligence was pleaded. The court gave the jury this instruction: "The court instructs the jury that it was the duty of the plaintiff, after the receipt of the telegram in question, to exercise ordinary care and diligence to arrive at the bedside of her father before he became unconscious, or before his death; and if they believe from the evidence that the plaintiff failed to exercise such care and diligence to arrive at his bedside before he became unconscious, or before his death, and that by reason thereof the plaintiff was prevented from arriving at his bedside before he became unconscious, or before his death, then the law is for the defendant, and they should so find." Gray, in his work on communication by telegraph, thus states the law relative to contributory negligence in this class of cases: "Sec. 100. The law imposes upon a person injured by the negligence of another the duty to make reasonable efforts to render that injury as small as possible; and it does not permit him to recover damages for any increase of loss consequent upon a failure to perform that duty." Also see Joyce, Electic Law, sec. 972. The injury to the plaintiff in this case and similar ones is the mental anguish suffered

because of the disappointment experienced by being deprived of an opportunity to be present at the closing hours or the death of a near relative. Where the negligence is the proximate cause of this deprivation and the consequent suffering, the law allows a recovery against the wrongdoer, to compensate for the injury sustained. There is, however, in all instances of negligent injury, the duty upon the injured party to do what he can by making reasonable exertions to render the injury as little as possible. This duty is positively imposed by every consideration alike of public interest and sound morality. Marr v. Telegraph Co., 85 Tenn., 550, 3 S. W., 496; Telegraph Co. v. Briscoe (Ind. App.) 47 N. E., 473; Telegraph Co. v. Mellon (Tenn.), 33 S. W., 727! Railroad Co. v. Clark's Adm'r, 20 R., 1375, (49 S. W., 323); Railway Co. v. Stephens, 14 R., 803, (22 S. W., 312). Nor is it at all required that the contributory negligence of the injured party should have been the sole cause of the injury. By the instruction given on this subject the trial court appears to have imposed upon the jury the necessity for believing, that before they could find for the defendant on account of plaintiff's alleged contributory negligence they must find that it was by reason thereof that plaintiff was prevented from arriving at her father's bedside before he became unconscious, or before his death. We are of opinion that it is sufficient that if the jury should find that, after plaintiff received the message, she failed to exercise that degree of care to reach her father before his death or insensibility that an ordinarily prudent person would have used under similar circumstances, and that her failure to use such diligence contributed directly and proximately to her failure to see her father before his death or such unconsciousness, then the jury should have found for the defendant, notwithstanding they may believe the defendant

was guilty of negligence in delivering the message to plaintiff. Upon a return of the case and another trial, the court should give an instruction on this subject, submitting the idea just presented.

It is argued for appellant that it was under no obligation to deliver the message to the plaintiff four miles in the country, and that it did not receive or contract to receive any compensation therefor. It was shown that appellant delivered messages only within the limits of the town where the office was situated without special contract extending its undertaking. We are of opinion that, while appellant may have refused to have undertaken to deliver a message beyond the limits of its lines and within the territory prescribed by reasonable rule for delivering messages, as for example in this case, to the limits of the town where the office was situated, yet, when it undertook to do so for a consideration, it was bound by its undertaking, although it may have been required to have paid out the full consideration so received, or even more, to the runner whom it employed to make the special delivery.

Nor can we agree that the making of such a contract by the agents of the telegraph company and the sender of the message was an individual transaction between the sender and the agent. It was within the scope, or, at least, within the apparent scope, of the agent's authority for his master to make such a contract, and the contract when made is obligatory upon the company. The circuit court properly excluded the evidence attempting to restrict the liability in this case to a transaction between the sender and the agent personally, and properly refused the instruction asked on this point.

But, for the errors herein indicated, the judgment is reversed, and cause remanded for a new trial not inconsistent herewith.