WESTERN UNION TELEGRAPH COMPANY *v.* ARCHER.

Opinion delivered October 31, 1910.

1. TELEGRAPH COMPANY—REGULATION AS TO FREE DELIVERY LIMITS.—A telegraph company may, by reasonable regulations, fix the limits for each of its stations within which it will deliver telegrams without extra charge, and beyond which it will exact extra compensation for their delivery. (Page 216.)

2. SAME—OBLIGATION TO DELIVER MESSAGE.—Where a telegraph company undertakes for an agreed consideration to deliver a message beyond its free delivery limits, it will be bound by such undertaking, though it may be required to pay more than the amount received to secure a messenger to make such delivery. (Page 217.)

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*Geo. H. Fearons, J. H. Crawford* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Callaway & Huie,* for appellee.

FRAUENTHAL, J.   This was an action to recover damages for mental anguish which appellee alleged she sustained by reason of the negligent failure of appellant to promptly transmit and deliver to her a telegram.   On January 17, 1909, a telegram was delivered to appellant's agent at Graysonia, Arkansas, addressed to appellee at Wynne, Arkansas, reading: "Come at once; Amanda is very sick."   The appellee was the mother of Amanda, the person described in the telegram, and who was the wife of J. T. Hampton, the person whose name was signed to the telegram.   On said day appellee was at the home of her son-in-law, W. R. Fisher, who resided about one and three-quarter miles from Wynne, Arkansas, and the telegram was addressed to her in his care.   The telegram was delivered to the agent of appellant at Graysonia by a son of "Amanda," mentioned in the telegram.   He testified that he told the appellant's agent that the person referred to in the telegram as "Amanda" was the daughter of the addressee, and that W. R. Fisher, the person in whose care the telegram was sent, lived about one and one-half miles from Wynne, and that appellee was then residing with him. His testimony tended to prove that appellant's operator required a payment of fifty cents for the transmission of the message without special delivery, and that he required the payment of an additional sum of twenty-five cents for the special delivery of the message to the residence of Mr. Fisher, located outside of Wynne, and that the sum required for the special delivery was paid in addition to the sum required for the transmission of the telegram; and that the appellant's operator then accepted and agreed to transmit and deliver same for said sums.   The telegram was sent on Sunday about 9 o'clock A. M.   The appellant's operator at Wynne testified that the telegram was received by him at 3 o'clock P. M. of the same day; that after some inquiry he learned that W. R. Fisher lived about one and three-fourths miles from Wynne, which was outside the free delivery limits at that station; that thereupon he endeavored to notify the sending office

that the necessary special messenger fee for delivery of message should be paid or guarantied, but that, on account of the day being Sunday and some intermediate office closed, he did not receive a reply until Monday morning; and that the reply was that the necessary special delivery charge would be guarantied up to $1.50; that thereupon the telegram was sent out by special messenger and delivered on the morning of that day, and that he paid to the messenger 75 cents for that service.

The testimony tended to prove that, if the telegram had been promptly delivered when received at Wynne, the appellee could and would have reached the bedside of her daughter at 12 o'clock noon on Monday; but that on account of the failure to deliver the message to her promptly she was unable to reach her daughter until Tuesday at noon. In the meanwhile, it was necessary that her daughter should undergo an operation which was being postponed awaiting appellee's arrival. Deeming it unwise to wait longer, the attending physician began to administer medicine for the operation so that the daughter lost consciousness a few hours before the arrival of appellee, and died shortly afterwards without regaining consciousness. Had the telegram been delivered to appellee promptly, she could and would have arrived at the bedside of her daughter from twenty to twenty-four hours before she became unconscious.

Upon the request of appellee the court gave, amongst other instructions, the following:

"2. You are instructed that if you believe from the evidence that Henry Hampton delivered the telegram in question to defendant's agent at Graysonia, and deposited such funds as said agent said was necessary for its prompt transmission and delivery, and that said defendant's agent agreed to and did undertake, by virtue of said agreement, to transmit and deliver said message, but that same was delayed by the negligence of said defendant's agents, and such delay caused the plaintiff to be delayed about twenty-four hours in reaching the bedside of the person referred to in the telegram, and that she suffered mental anguish because of such failure, then you will find for the plaintiff."

The court refused to give the following instruction requested by appellant:

"If you find from a preponderance of the evidence in this case that the sender of the message to the plaintiff delivered said message to defendant's manager at Graysonia, on Sunday, the 17th day of January, 1909, to be transmitted to the plaintiff at Wynne, Arkansas, and that the said message reached Wynne promptly soon after it was received at Graysonia, and that the defendant's manager at Wynne ascertained that the plaintiff and the said W. R. Fisher, in whose care the message was sent, resided one and three-fourths of a mile or more from the defendant's telegraph office at Wynne, and that the said town or city of Wynne contained less than 5,000 inhabitants, and that the necessary special messenger delivery fee had not been paid or guarantied by the sender of the said message, through the defendant's Graysonia office, and that the defendant, in good faith, endeavored to secure the payment or guaranty of the special delivery fee, on Sunday evening, January 17, 1909, by sending service messages back to the Graysonia office, and that, on account of the day being Sunday, the manager of the defendant at the Graysonia office was not in his office, and for that reason did not receive the said service message until Monday, the 18th day of January, 1909, and that as soon as the special delivery messenger fee was paid or guarantied a special messenger was sent with the message, who delivered same promptly soon thereafter, then your verdict should be for the defendant."

A verdict was returned in favor of appellee for $650, and from the judgment entered thereon this appeal is prosecuted.

It is urged by counsel for appellant that the lower court committed an error in refusing to give the above instruction asked by it. But, under the circumstances of this case, we think that the instruction was misleading, and not a correct statement of the law as applicable to the issue made herein and presented by the testimony adduced in the trial of the case. The appellant contends that the appellee resided without the limits fixed for the free delivery of messages at its office at Wynne, and that, as soon as the necessary special fee for the delivery outside said limits had been guarantied, it promptly delivered the message. But the real question to be settled by the jury in this case was, not whether the special fee suggested by the receiving operator or by any rule of the telegraph company as

necessary for the delivery of the telegram was guarantied, but whether or not the sender of the telegram paid to the sending operator the amount asked by him as the extra charge for the delivery of the message, and whether or not the sending operator accepted such extra charge, and therefor agreed to deliver the message, in addition to transmitting it. A telegraph company may, by reasonable regulations, fix the limits for each of its stations within which it will deliver telegrams without extra charge, and beyond which territory it may exact extra compensation for all deliveries made. It may thus prescribe that it will not be under any obligation to deliver the message beyond the free limits if the extra payment is not made. Jones, Telegraph & Telephone Companies, § 296.

But the obligation which the telegraph company assumes relative to the delivery of the message is determined by the contract it makes at the time it accepts the message for transmission. It may specially agree to carry the message beyond its free delivery limits, and when it does so it incurs all liability growing out of a failure to observe such agreement. And where it undertakes to deliver a message beyond such free limits for an agreed consideration, it will be bound by such undertaking, although it may be required to pay more than the amount received to secure a messenger to make such delivery. It becomes obligated by its contract to deliver for the extra charge agreed upon, and it is not absolved from such obligation because the special fee accepted by it is not sufficient or is not the amount necessary to secure a messenger to make such delivery. 2 Joyce on Electric Law, § § 768, 762; 27 Am. & Eng. Enc. Law, 1030; *Western Union Tel. Co.* v. *Matthews*, 67 S. W. 849; *Western Union Tel. Co.* v. *O'Keefe,* 29 S. W. 1137; *Western Union Tel. Co.* v. *Teague,* 36 S. W. 301; *Western Union Tel. Co.* v. *Warren,* 36 S. W. 314.

The testimony on the part of appellee tended to prove that the operator of appellant at Graysonia agreed to transmit the telegram for 50 cents and to deliver it for the extra charge of 25 cents; and that these requirements for the transmission and also for the delivery of the message were complied with by the sender. If that contract was made, the appellant was bound thereby, and thereby obligated itself to both transmit and deliver

the message for those charges. It appears from the testimony on the part of appellant that its operator at Wynne, either because he had not been notified that the extra charge for delivery had been arranged or for other reason, did not deliver the message promptly upon its receipt by him, but made demand for a guaranty of delivery charges up to $1.50, and thereafter paid 75 cents to a messenger which he testified was necessary to secure the special messenger to make the delivery. Now, by the above instruction requested by it, the appellant asked the court to instruct the jury in effect that the appellee could not recover if "the necessary special messenger delivery fee had not been paid or guarantied by the sender of the said message." From this the jury might have understood that, before the appellee was entitled to recover, the sender must have paid for the extra charge for delivery the sum of 75 cents, the amount which the operator at Wynne found necessary to pay to the messenger to deliver the telegram, or the sum of $1.50, the amount which was asked to be guarantied. But that would not be a correct statement of the law applicable to this case. For, if the operator at Graysonia agreed to deliver the message for the extra charge of 25 cents, then the appellant was under obligation to make the delivery. The question therefore to be determined by the jury was, not whether "the necessary special delivery fee" was paid, but whether or not the sender of the message actually paid the extra charge agreed upon for the delivery of the telegram. The instruction asked for by appellant was therefore misleading, and it was not error to refuse it. We think that the above instruction given at the request of the appellee correctly covered this phase of the case.

This is the only error which appellant, in its brief on this appeal, urges was committed in the trial of this case; and we do not think that its contention is well founded. Finding no prejudicial error, the judgment is affirmed.