WESTERN UNION TELEGRAPH COMPANY *v.* McMULLIN.

Opinion delivered March 20, 1911.

1. TELEGRAPH COMPANY—DUTY IN DELIVERY OF A MESSAGE.—It is the duty of a telegraph company to exercise ordinary diligence to deliver a message within its delivery limits. (Page 350.)

2. SAME—DELAY IN DELIVERY OF MESSAGE—WHEN QUESTION FOR JURY.— In an action against a telegraph company for negligence in failing to deliver a message promptly, where the operator at place of delivery testified that he telephoned to all the hotels and boarding houses in the town which were in the telephone directory, and failed to locate the addressee, who was stopping at a boarding house, and there was evidence of a number of keepers of hotels and boarding houses that the operator did not telephone them about the message, the question whether the telegraph company was negligent was one for the jury. (Page 350.)

3. SAME—MENTAL ANGUISH—ELEMENT OF DAMAGE.—In an action for negligent delay in delivering a telegram it was not error to submit to the jury whether the addressee was entitled to damages for mental anguish because she was thereby deprived of being with her daughter to comfort her on account of the loss of her baby; the company having notice of the relationship of the addressee to the deceased child. (Page 350.)

4. SAME—DEGREE OF CARE—INSTRUCTION.—Where the sender of a telegram asked for an immediate delivery of the message and offered to pay for its special delivery, but the operator told him that the

message would be sent without extra pay, an instruction that if "the defendant negligently and carelessly failed and refused to make an immediate and special delivery of said message within its delivery limits when it could reasonably have done so, and when it had undertaken and was paid to do so, then you will find for the plaintiff," was erroneous as imposing too high a degree of care upon the telegraph company. (Page 351.)

Appeal from Cleburne Circuit Court; *Brice B. Hudgins,* Judge; reversed.

*George B. Fearons, Mitchell & Thompson* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. The burden of proof was on appellee to show that she could have been reached by proper effort. 91 N. E. 867; 84 N. Y. 54; 130 S. W. 616; 130 S. W. 212; 7 So. 419; 41 So. 405; 65 App. Div. 149.

It was appellant's primary duty to deliver the telegram to James Clark, in whose care it was addressed. 13 S. W. 985.

2. The court's instruction as to the degree of care required of appellant (instruction 2) was erroneous. There is no testimony to show that appellant made any agreement in regard to this message other than that imposed by law to exercise reasonable care and diligence. The fact that the sender demanded some diligence above that required by law would not of itself enlarge the duty of the telegraph company. 27 S. W. 892. See also Kirby's Dig., § 7943.

3. Instructions which authorized the jury to allow damages for mental anguish to the mother because she was not with her daughter to comfort her 24 hours earlier than she actually reached her were erroneous, as this is not such mental anguish as is a ground of recovery within the legal meaning of that term. 82 Ark. 128; 83 Ark. 476; 90 Ark. 268; 92 Ark. 59; 9 S. W. 958; 73 S. W. 1043; 58 S. W. 204; 41 S. W. 469; 99 S. W. 704; 100 S. W. 974; 85 S. W. 1171; 32 N. E. 871; 10 La. Ann. 33.

HART, J. Appellant prosecutes this appeal to reverse a judgment rendered against it in favor of appellee for damages for the alleged negligence of appellant in delivering a death message. The message is as follows:

"To Mollie McMullin,

  "Care James Clark, Heber.

  "Horse ran away, killed Roy Russell's baby; injured his wife.

  "Bathie Pulliam."

And was delivered to appellant at Moro, Ark., for transmission at 5:30 o'clock P. M. on August 27, 1910.

James Clark and Mollie McMullin, the appellee, were brother and sister, and had been in Heber for about one week when the message was sent. They were there for the benefit of their health, and were staying at separate boarding houses several blocks distant from each other. Appellee lived near Moro, and was the mother of the wife of Roy Russell, and the grandmother of his baby. Bathie Pulliam, who sent the message, was the son of appellee. He informed the operator at Moro of the relationship between all the parties. He said that he got to the depot at about 5:30 o'clock P. M., and asked for a special delivery, and the operator said the message would be sent without extra pay; that the message would only cost 25 cents, and would be delivered without extra pay. The operator sent the message to Heber while he was in the office, and told him it had been received there. The operator at Heber said that it was only 45 minutes from the time he received the message until the train arrived at Heber, the arriving time being 6:30 P. M. The train left at 7:05 P. M. That is to say, the train going towards Moro left an hour and twenty minutes after the message reached Heber. He further testified that as soon as he received the message he made effort to deliver the message by telephoning to the various hotels and boarding houses to ascertain if either James Clark or appellee was there; and that he was unable to locate either of them. It is conceded that both James Clark and appellee were boarding at houses within the free delivery limits of appellee.

The evidence on the part of appellee shows that she did not receive the message until between 12 and 1 o'clock on the next day. She left on the next train for home, but arrived there too late to attend the funeral of her grandchild. She testified that she loved the baby as much as if it had been her own child, and she suffered great anguish of mind because she did not reach home in time to attend the burial of the child, and to have comforted her daughter.

It was the duty of appellee to exercise ordinary diligence to deliver the message within its delivery limits in the town of Heber. *Arkansas & La. Ry. Co.* v. *Stroude,* 82 Ark. 117. This counsel for appellants admit, but insist that the undisputed evidence shows that appellant discharged its duty in this respect. We do not think so. While the operator at Heber states that he telephoned to all the hotels and boarding houses at Heber which were in the telephone directory, he does not know whether he was answered by the proprietors or merely by some one of the guests. Moreover, appellee introduced quite a number of hotel and boarding house keepers, who testified that the operator did not telephone them about the matter. In view of all the facts and circumstances adduced in evidence, we are of the opinion that the question of the negligence of appellant in delivering the message was one for the jury. *Western Union Tel. Co.* v. *Sockwell,* 91 Ark. 475.

2. Counsel for appellant contend that the court erred in submitting to the jury that appellant was entitled to damages for mental anguish because she was not with her daughter to comfort her 24 hours earlier than she reached her. This element of damage was submitted to the jury with the element of mental anguish for failure to attend the funeral of the baby, and counsel contend that it was an emotion too vague and uncertain to be within the legal meaning of mental anguish. In the case of *Western Union Tel. Co.* v. *Raines,* 78 Ark. 545, Mr. Justice BATTLE, speaking for the court, said: "The damages recoverable under the statute are such as the jury may conclude resulted from the negligence of the telegraph company. Such damages are allowed as a compensation for the mental anguish or suffering; and the liability of the company for the same depends upon its having had notice, before or at the time of receiving the telegram, of the special circumstances on account of which mental suffering was caused by negligence in transmitting or delivering the message. This notice may be given by or through the telegram itself or otherwise." Our statute, which allows a recovery in telegraph cases for mental suffering, does not define its meaning or provide a rule of evidence for its ascertainment. (Kirby's Digest, § 7947.)

It is impossible to define everything that should be regarded as mental anguish or suffering. Of course, there can be no re-

covery for imaginary situations, or conditions or anxiety caused thereby; but a recovery will be allowed for the mental suffering which the failure to deliver the telegram may reasonably be expected to produce upon an ordinary human being, and, under all the facts and circumstances of this case, the court properly submitted to the jury the question of what mental anguish, if any, resulted to the appellee from the alleged negligence of appellant in not delivering the message.

3. It is next contended by counsel for appellant that the court erred in giving the following instruction:

"2. You are further instructed that if you believe from the evidence that plaintiff's son, Bathia Pulliam, at the time he delivered said telegram at Moro, Arkansas, for transmission and delivery, informed defendant of the importance of the message and the near blood relationship existing between plaintiff and the deceased baby and its injured mother, Mamie Russell; and if you further believe that the said Bathia Pulliam then and there did ask and demand an immediate and special delivery of said message to the said plaintiff or to James Clark in whose care it was sent, and did then and there offer and pay to the defendant the sum by it demanded for the transmission and immediate and special delivery of said message from its office at Heber to sendees, and if you further believe that the defendant negligently and carelessly failed and refused to make an immediate and special delivery of said message within its delivery limits when it could reasonably have done so, and when it had undertaken and was paid to do so, then you will find for the plaintiff and assess her damages at whatever sum you may find her entitled to under the proof."

We think it was error to give the instruction. In the first place, there was no evidence upon which to base it. It is true that Bathie Pulliam testified that he asked for a special delivery, but the agent told him it would be delivered without extra pay. The message was then delivered and received for transmission in the ordinary course of business, and without any contract for delivery at Heber other than the duty required by law. As soon as appellant received the message at Heber, it was his duty to exercise ordinary diligence to deliver it to the sendee within its delivery limits, and this is in accord with the other instructions

given. The instruction complained of imposed a stricter duty than this upon appellant. It in effect told the jury that the request of Bathie Pulliam for a special delivery created a special or greater duty in regard to the delivery of the message than would have been imposed upon appellant without such request. The jury might have found for appellee under each of these theories, and we can not tell upon which one it based the verdict. For this reason the instruction complained of was prejudicial. *St. Louis, I. M. & S. Ry. Co.* v. *Denty,* 63 Ark. 177.

For the error in giving instruction No. 2 the judgment will be reversed, and the cause remanded for a new trial.