WESTERN UNION TELEGRAPH COMPANY *v.* LITTLEFIELD.

## Opinion delivered January 12, 1914.

1. TELEGRAPH COMPANIES — RULES — FAILURE TO DELIVER MESSAGE PROMPTLY.—A telegraph company is not liable for negligence for receiving a telegraph message, knowing that it could not be delivered that night, when the message was delivered to the defendant company about 6 p. m., and the agent informed the sender that he thought it would reach its destination too late to be delivered that night.    (Page 606.)

2. TELEGRAPH COMPANIES—DUTY TO DELIVER MESSAGE BY TELEPHONE.— When a telegraph message was received at night after the hours of free delivery, and it is the custom of defendant to deliver messages over the telephone at night, defendant is not guilty of negligence, where it used reasonable efforts to deliver the message by telephone, and was informed by the central office of the telephone company, that the addressee of the message, had no telephone. (Page 606.)

3. EVIDENCE—BURDEN OF PROOF.—An instruction that "the burden is on defendant to establish its defense by a preponderance of the evidence, unless such defense sufficiently appears from the evidence of the plaintiff," is not prejudicial when the court also instructed the jury that "the plaintiff is required to prove or make out a case by a preponderance or greater weight of evidence." (Page 606.)

Appeal from Cross Circuit Court, First Division; *J. F. Gautney*, Judge; reversed.

### STATEMENT BY THE COURT.

This is a suit to recover damages for mental anguish alleged to have been suffered by appellee on account of the alleged negligent failure of appellant to promptly deliver to her the following telegram:

"To Mrs. Annie Littlefield, Wynne, Ark.

"Papa no better; come in A. M.

"Tom Jones."

Appellee resided at Wynne, Arkansas, and her father, J. Jones, resided at Palestine, Arkansas. Her father being very sick, on the 13th of February, 1912, her brother, Edwin Jones, at 6 o'clock on that day, delivered the above telegram to the appellant at Palestine. Jones testified that he delivered the message about 6 o'clock one

evening. He says: "It was about 6 o'clock some time." He was asked the following question: "If the plaintiff alleges that it was 5:50 they are wrong, are they?" and answered, "I believe they are." He was asked, "You don't know what time it was delivered?" and answered, "No, sir; but it was right at 6 o'clock." Witness further testified that the operator told him the message ought to be delivered that night, but he didn't know whether they would deliver it or not.

The proof shows that the office hours of appellant at Wynne were from 8 o'clock in the forenoon to 6 o'clock in the afternoon, but that messages were generally delivered by telephone to known parties who had telephones. Witness says it was the custom to do this. The messenger boy was only on duty from 8 in the morning to 6 o'clock in the evening. There was no direct communication over appellant's wires between Palestine and Wynne, and the message had to go by way of Memphis. Memphis is a large relay office, and messages there are handled according to their turns. This message would have had the right-of-way over ordinary messages. At the time the message was filed at Palestine, there was no message ahead of it for transmission. It would have taken twenty minutes to send the message. The line direct from Forrest City to Wynne was used exclusively for railroad purposes.

Appellee testified that on the morning of the 14th, she received a message about 9 o'clock. But on cross examination, she stated that she had signed a receipt for the message showing that it had been deliverd to her at 8 o'clock that morning, and this receipt was introduced in evidence. She further testified that she was telephoned about 9 o'clock that morning that Ben (the messenger boy) was on his way down with a message for her, and that she would have to go away on the 9 o'clock train; that when Ben got to her house with the message, she was away from home, and could not then get any train out until 11:40. Appellee further testified that if she had received the message in time to have taken the 7

o'clock train out of Wynne in the morning, she could have reached her father's bedside before he became unconscious. He became unconscious at 2 o'clock P. M., and she didn't arrive at Palestine until 5 o'clock P. M. She suffered mental anguish because her father, while conscious, had called for her, and when she reached his bedside, he could not recognize her.

The operator at Wynne testified that when the message came, at about 2:30 A. M., he examined the telephone directory, and could not find the name of plaintiff in it; that he then called up the central telephone office there in Wynne, and was informed by the girl in charge that her brother had no telephone; that he then left the message for the messenger boy the next morning.

There was testimony on behalf of the appellee tending to show that appellee had a telephone in her house when this message was received at Wynne.

The court, among others, granted the following prayers for instructions:

"2. The plaintiff is required to prove or make out a case by a preponderance or greater weight of evidence, and unless you find she has done so, you will find for the defendant."

"3. The burden is on the defendant to establish its defense by a preponderance of the evidence, unless such defense sufficiently appears from the evidence of the plaintiff."

There was a judgment in favor of the appellee in the sum of $500.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. Under the evidence, this case is controlled by the case of *Western Union Telegraph Company* v. *Turley,* 108 Ark. 92.

2. Instruction 3 is erroneous in that it, in effect, relieves the plaintiff of the burden of proof.

*O. N. Killough,* for appellee.

1. This case is not controlled by the *Turley* case. 156 S. W. 836. There is no proof to show that the message, received at Palestine before 6 o'clock, could not have been delivered to appellee at Wynne before 6 o'clock on the same day.

2. Read in connection with instruction 2, as it should be, instruction 3 is not bad.

WOOD, J., (after stating the facts). 1. The case does not differ in essential particulars from the case of *Western Union Telegraph Co.* v. *Turley, et al.,* 108 Ark. 92, 156 S. W. 836. The uncontroverted evidence shows that the message was not delivered to appellant at Palestine in time to have been transmitted to Wynne before 6 o'clock P. M. It was received by appellant at Palestine not before 5:50 o'clock—at about 6 o'clock P. M.—and it would have taken about twenty mintues for its transmission. Appellant was not negligent in receiving the message, knowing that it could not be transmitted in time to reach Wynne within appellant's office hours, for the agent who received the message for transmission informed the sender that while the message ought to be delivered that night, he did not know whether they would deliver it or not.

If it be conceded that it was the custom of appellant to deliver important messages over the 'phone to known parties at Wynne after office hours, the uncontroverted evidence shows that appellant duly observed that custom in this instance, for the operator who received the message at Wynne endeavored to 'phone this message to appellee just after he had received it, but could not succeed in doing so for the reason that the name of the appellee did not appear on the telephone directory, and the party in charge of the central telephone office informed the operator that appellee had no telephone.

While appellee testified that she had a telephone in her house at that time, she does not show that her name appeared in the telephone directory, and appellant's agent exhausted all sources of information at his com-

mand in order to ascertain whether appellee had a telephone, and the uncontradicted evidence shows that he was not negligent in his endeavors to communicate the message to appellee over the telephone.

So, if the rule of appellant establishing, office hours at Wynne was abrogated by a custom to deliver messages over the telephone after these hours, still, under the undisputed evidence, there was no negligence on the part of the appellant, for it exercised ordinary care to comply with that custom.

2. Appellant complains of instruction No. 3, but when this is read in connection with No. 2, as it must be, the instruction was not misleading, and, although it may have been more happily worded, the granting of the prayer was not prejudicial error.

For the error in refusing to set aside the verdict on account of the insufficiency of the evidence, the judgment is reversed and the cause will be remanded for a new trial.