WESTERN UNION TELEGRAPH COMPANY *v.* POPE.

## Opinion delivered November 3, 1924.

1. TELEGRAPHS AND TELEPHONES—NONDELIVERY OF TELEGRAM—DAMAGES.—A telegraph company is not liable for negligent failure to deliver a telegram announcing the illness of the addressee's wife if he reached home as soon as he could have arrived, had the message been delivered, and it was error to refuse to so instruct.

2. TELEGRAPHS AND TELEPHONES—NONDELIVERY OF TELEGRAM—EVIDENCE.—In an action against a telegraph company for nondelivery of a telegram resulting in plaintiff-addressee's absence from his wife's death-bed, evidence that friends would have gone after him if the sender had been notified of nondelivery of the telegram is competent as tending to show that injury would have been avoided if notice had been given.

3. TELEGRAPHS AND TELEPHONES—VALIDITY OF DELIVERY RULE.—A regulation of a telegraph company that messages are accepted for free delivery only within half a mile of its office, and that it will not deliver beyond such limit unless cost of so doing is paid, is a valid rule.

4. TELEGRAPHS AND TELEPHONES—DELIVERY OF MESSAGES—DILIGENCE.—Where free delivery limits are fixed by a telegraph company's regulations, it must use reasonable diligence within those limits to deliver telegrams.

5. TELEGRAPHS AND TELEPHONES—DILIGENCE—JURY QUESTION.—Whether a telegraph company used reasonable diligence to deliver a telegram within its free delivery limit, *held* under the evidence to be a jury question.

6. TELEGRAPHS AND TELEPHONES—INSUFFICIENT ADDRESS.—In an action against a telegraph company for nondelivery of a telegram, it is no defense that no sufficient address was furnished, unless such insufficiency contributed to the failure to deliver.

7. TELEGRAPHS AND TELEPHONES—NONDELIVERY OF TELEGRAM—EVIDENCE.—In an action for failure to deliver a telegram, evidence that the delivery of another telegram to a third party, relating to the same subject-matter, sent to the same telegraph office, addressed to a well-known place of business 100 yards from the telegraph office, was delayed six or seven hours, *held* to tend to show want of special effort to deliver the telegram in question.

Appeal from Clark Circuit Court; *James H. McCollum,* Judge; reversed.

*Francis R. Stark, Rose,. Hemingway, Cantrell & Loughborough,* and *J. H. & D. H. Crawford,* for appellant.

The verdict is contrary to the evidence. There was no obligation on the part of the telegraph company to deliver the message beyond the free delivery limits, except upon agreement, at the sender's request, and upon the payment of the expense thereof, and, in that case, without liability on the part of the company. 161 S. W. 369; 89 Ark. 402. It may be conceded that Bandy went to Smackover frequently, and that he was well known, particularly to a certain grocery firm there. There was no proof that he was there on December 7. 85 So. 349. The telegraph company is not required to insure delivery, nor to search out every conceivable place in a community in order to deliver a message. 74 S. W. 922; 148 S. W. 157. The mailing of the message, properly addressed, is a good and sufficient delivery. 91 S. W. 257; 90 So. 793. In this case it was not known by the contracting parties that the sendee lived beyond the free delivery limits, and no custom to deliver beyond the limits was in evidence. The telegraph company was justified in acting upon the assumption that the sendee, or Bandy, could be found within the free delivery limits of the office at Smackover, and it cannot reasonably be contended that the parties had contracted for a delivery elsewhere. 189 S. W. 1008; Jones on Telegraph & Telephone Companies, 2d ed. 423, § 302, and note 203; 89 Ala. 510, 18 Am. St. Rep. 148 *et seq.;* 144 Ala. 618, 113 Am. St. Rep. 66.

*J. O. A. Bush,* for appellee.

If the defendant was unable to deliver the message, *for any cause,* it was its duty to notify the sender that the message could not be delivered. 100 Ark. 6; 91 Ark. 602; 16 L. R. A. (N. S.) 871, note; 61 S. E. 653; 139 N. C. 369, 52 S. E. 50.

When it was shown that the telegram was delivered to appellant on the morning of December 7, and paid for, and that it was never delivered, the burden was cast

upon the appellant of proving that it was not its fault. 100 Ark. 296; 110 Ark. 180.

SMITH, J. Appellee sued for damages to compensate the mental pain and anguish suffered by him on account of the alleged negligent failure of the appellant telegraph company, hereinafter referred to as the company, to deliver to him a telegram advising him of the illness of his wife, it being alleged that this negligence was the proximate cause of his failure to be present during the last illness of his wife. He recovered judgment, and the company has appealed.

There was an amended complaint in which it was alleged that the company had received for transmission three messages, and that there was a negligent failure to deliver each of them.

Appellee was employed as a laborer by Kimball & King, who were engaged in drilling an oil well two or three miles from Smackover, and, during this employment, he boarded at a boarding house kept by a man named Bandy, who had altogether about a hundred boarders.

Appellee's home was in Okolona, Arkansas, where he left his wife in good health when he went to Smackover to secure employment. His wife became ill, and grew rapidly worse, and the attending physician announced to the family that his patient would die, and her husband should be notified at once. At the request of the family, Dr. Alford, the attending physician, delivered to the company's agent at Okolona the following message: "Okolona, Dec. 7, 1922. Mr. Ed Pope, c/o 'Bandy,' Smackover, Ark. Come home at once; your wife is very sick. Dr. J. E. Alford."

The message was carried to the company's agent by a boy named Chester Killingsworth, who was unable to furnish a more definite address, and the agent and the doctor had a conversation over the telephone in regard to this message.

The customary charge was paid by the doctor, and there is a conflict in the testimony between the doctor

and the agent as to what was said by the agent concerning the sufficiency of the address. The agent testified that he called the doctor on the telephone and advised him that the address was insufficient, and that the message would probably not be delivered unless a more definite address was given, and that, when the doctor stated that he could not furnish a more definite address, he (the agent of the company) wrote on the message before sending it that it was "Accepted sender's risk account insufficient address." The doctor's testimony is in conflict with this statement.

This message was received for transmission at 11:25 A. M. December 7, and was promptly transmitted to Smackover. The company's agent at the last-named place testified that he saw, when he read the message, that the address was indefinite, so he made two copies of it. He gave one copy to the delivery boy and took the other himself. He detailed the inquiry he made to find the addressee of the telegram, and it is contended by the company that the agent made even greater efforts to deliver the message than ordinary diligence would have required him to make. The agent at Smackover testified that, when he failed to locate the addressee, he mailed the telegram, placing the address on the letter given in the telegram. The letter containing the telegram was not delivered, but was returned to the agent at Smackover, who introduced it in evidence. It is contended by the company that the postmark on the envelope shows that the letter was mailed December 7. The agent at Smackover admitted that he did not send a service telegram to the Okolona office until December 9, advising that the message had not been delivered.

The undisputed testimony shows that, on account of the discovery of oil, Smackover grew in a few months from a little village of about a hundred population to a busy bustling city of twenty-five to thirty thousand, and that, on account of the enormous traffic incident to this growth and the development of the oil fields, the streets in the city and the roads in the country had been ren-

dered almost impassable, yet it was also shown that "Bandy," with whom appellee boarded, came to Smackover daily, and was in that city on December 7, 8 and 9, and on each day went to the postoffice and received mail, and the letter said to have been addressed in his care was not delivered to him by the postmaster. It is contended by appellee that the envelope offered in evidence by the company's agent at Smackover shows an erasure before the figure 7, under the abbreviation "Dec.," and that the letter was not in fact mailed until December 27, which was the day after the institution of this suit.

Jesse Pope, a sixteen-year-old son of appellee, testified that he had been at work with his father at Smackover, and that he left there on the 8th to return home, where he arrived on the 9th. His home was about a mile and a half from Okolona, and, upon arriving there, he found his mother desperately ill, and, knowing that the telegram to his father from the doctor had not been delivered, he proceeded to send another, and this one was sent between eleven and twelve A. M. on December 9. This witness testified that he did not know any one in Smackover who knew his father in whose care the message could be sent, but he told the agent at Okolona that his father was working for Kimball & King, who were drilling an oil well about two miles from Smackover, and he offered to pay any expense incident to the delivery of the message up to $20, but the agent told him there would be no charge except that for sending the message, and this the witness paid.

This message sent by appellee's son was never delivered, and, as has been said, it is alleged there was actionable negligence in the failure to deliver this message.

In regard to this message the company asked, but the court refused to give, an instruction numbered 15, which reads as follows: "If you find that the plaintiff, Ed Pope, left Smackover, Arkansas, for his home on the 9th of December, 1922, taking a railroad train that left there, and arrived at his residence at or near Okolona,

Arkansas, by jitney from Gurdon, Arkansas, as expeditiously as he could have arrived there if the message of December 9, 1922, signed by Jesse Pope, had been delivered to him on that day, then your verdict should be for the defendant, as to said message sent by Jesse Pope on December 9, 1922.''

In our opinion it was error to refuse this instruction, for the reason that the jury might have found that the delivery of this message, without actionable delay in so doing, would not have brought appellee to the bedside of his wife until after her death, and but little, if any, earlier than he did in fact arrive. He left Smackover at 3:15 on the afternoon of the 9th, and, upon arriving at Gurdon by train, which is 52 miles from Smackover, he learned that some member of his family was sick. He then hired an automobile, and arrived at his home near Okolona between four and five A. M., only then to learn that his wife had died at nine P. M. on the night of December 9, and, if appellee could not and would not have arrived home earlier had there been no actionable negligence in delivering this telegram, then the failure to deliver without such delay was not the proximate cause of his suffering, and the instruction should have been given.

The testimony shows that the friends and members of appellee's family awaited anxiously his arrival home the night of the 7th and during the 8th, and that a friend proposed to go after him in an automobile, but this was not done after it was learned that the telegram had been sent.

This testimony was objected to. But we think it was competent as tending to show that appellee could and would have been advised of his wife's illness and brought to her bedside before her death had the agent at Smackover advised the agent at Okolona of the nondelivery of the message. *Western Union Tel. Co.* v. *Bickerstaff,* 100 Ark. 1.

It was shown that the message was accepted for free delivery only within half a mile of the company's office

in Smackover, and that the addressee lived more than two miles from the office. The validity of this regulation has been several times recognized by this court. *West. Union Tel. Co.* v. *Littlefield*, 110 Ark. 602; *West. Union Tel. Co.* v. *Archer*, 96 Ark. 213.

But the company's rules, which were offered in evidence, and which show that a radius of half a mile constituted the free delivery area, also show that the receiving agent was required to notify the sending office of the nondelivery of a message, and, if the services of a special messenger were required, that the sending office should be notified of that fact, together with the cost of such delivery, and, if a satisfactory reply was not received from the sending office, a copy of the telegram should be mailed to the addressee under the address given in the message.

As we have said, it is settled that the company is not required to make delivery beyond the free delivery limit unless the cost of doing so is paid, but it is the company's duty to use reasonable diligence within this free delivery limit to make the delivery. *West. Union Tel. Co.* v. *Evans*, 108 Ark. 39; *King* v. *Western Union Tel. Co.*, 89 Ark. 402; *Ark. & La. Ry. Co.* v. *Stroude*, 82 Ark. 117; *Postal Tel. & Cable Co.* v. *Kelley*, 103 Ark. 442; *West. Union Tel. Co.* v. *McMullin*, 98 Ark. 347.

The service message from Smackover to the agent at Okolona, advising that the message had not been delivered, was not sent until December 9, and the testimony is not undisputed that the telegram was mailed to the addressee on the 7th. Both these things could have been done within the free delivery limit.

We are of the opinion therefore that the court did not err in refusing to direct a verdict in favor of the company, for the reason that a jury might find that the exercise of reasonable diligence in an effort to deliver the telegram would have required the agent at Smackover both to send a service message more promptly than was done, advising that the message had not been delivered, and to have mailed a copy of the telegram to

the addressee on the 7th, as the agent testified he did do. There was also some testimony tending to show that, by a reasonably diligent inquiry within the free delivery radius, a delivery of the message without this limit might have been made.

The company pleaded contributory negligence of the sender in failing to give a more definite address, and insists that a verdict should have been directed in its favor on that account.   But the insufficient address of appellee would not avail the company as a defense unless the failure to deliver the telegram to appellee was caused by such defect, or unless such mistake contributed to the failure to deliver.   This was a proper question for the jury.   *Ark. & La. Ry. Co.* v. *Stroude*, 82 Ark. 117; *West. Union Tel. Co.* v. *Lewis*, 89 Ark. 375.

The message sent by appellee's son read as follows:  "Okolona, 12-9-1922.   To Ed Pope, c/o Kimball & King, Contractors, Smackover, Ark.   Come at once; mother dying.   Jesse Pope."

It is insisted that this address was so insufficient as to constitute contributory negligence.   But, as we said in regard to the first message, this was a question for the jury.

The other telegram referred to above was sent by the postmaster at Okolona, who was a friend of appellee, to Howard East, the assistant cashier of a bank in Smackover.   This message was sent about 8 or 9 A. M. on December 9, and was delivered to the addressee there named.   Of course the company was not liable for any failure on the part of East to deliver a message to appellee, as the telegram to East requested him to do, and it would be without value as evidence but for the fact that the message related to the same subject-matter as the other telegrams.   This last-mentioned telegram contained a full and sufficient address, and the addressee had a well-known place of business only about a hundred yards distance from the telegraph office; yet it was not delivered for six or seven hours, and this testimony has

some probative value to show that no special effort had been made to deliver the other messages.

For the error in the refusal to give the instruction set out above the judgment of the court must be reversed, and it is so ordered.