ARKANSAS & LOUISIANA RAILWAY COMPANY *v.* STROUDE.

### Opinion delivered March 4, 1907.

1. TELEGRAM—NONDELIVERY—DEFENSE.—The fact that the person to whom a telegram was sent lived beyond the delivery limits of the telegraph company did not excuse such company for failure to deliver the telegram if the telegram could have been delivered to him within such limits. (Page 126.)

2. SAME—MISTAKE AS TO SENDEE'S INITIAL.—A mistake in one of the initials of the person to whom a telegram was sent did not excuse the telegraph company for failure to deliver the telegram unless the mistake caused or contributed to the failure. (Page 127.)

3. TRIAL—ABSTRACT INSTRUCTION.—In an action against a telegraph company for failure to deliver a telegram, it was not error to refuse to charge the jury that "the law forbids the divulgence of the contents of a telegraph message, and the delivery of a message to one person which is addressed to another would be a violation of law," where such instruction was not applicable to the facts in proof. (Page 127.)

4. SAME—REMARK OF COURT—WHEN HARMLESS.—Where evidence offered by appellant was incompetent, it was not error for court, in admitting it, to remark that it was incompetent, but he "would let it go." (Page 127.)

5. DAMAGES—INTEREST.—Where a jury awarded a sum as damages for nondelivery of a telegram, it was error for the court to add interest thereon *from the date of such nondelivery, instead of from the date* of rendition of the judgment. (Page 127.)

Appeal from Howard Circuit Court; *James S. Steel,* Judge; modified and affirmed.

STATEMENT BY THE COURT.

Stroude sued appellant for damages for mental suffering on account of the alleged failure of appellant to deliver to him a telegram which read as follows:

"Your wife is not expected to live. Come home at once.
                                          "JOHN CARTER."

Appellant alleged that this telegram was sent to him at Nashville, Arkansas, by his relative, from Mohawk, Tenn., where his wife and daughter lived, but that through the negligence of appellant it was not delivered; that by reason of the failure to deliver the telegram he was deprived of the privilege of being with his wife before she died, and for the privilege of being with his daughter, and of giving her such comfort and consolation as only a father could under such circumstances, and of selecting the burial place for his wife and being present at the funeral. He prayed judgment for the sum of $1,995.

Appellant admitted that on September 30, 1903, it received a message from Mohawk, Tenn., dated 9-30-'03, addressed A. G. Stroud, Nashville, Ark., stating that his wife was not expected to live, and directing him to come at once, and alleged that this message was received by defendant from the Western Union Telegraph Company at Hope, Arkansas, September 30, 1903, and promptly transmitted to Nashville, Ark., over the wire of the defendant, about 10:30 A. M. of said day. That immediately on receipt of said message the agents of the defendant at Nashville made diligent and *bona fide* efforts to find the addressee, A. G. Stroud, in order to make delivery of said message; that no such person was learned of by such inquiry, and for this reason the message could not be delivered; that no person at or near Nashville by the name of A. G. Stroud was known to the agents of defendant; that a person by the name of A. J. Stroude lived at the time near Nashville, but outside the corporate and delivery limits; that even this was not learned by the agents of the defendant until about the time this suit was brought. Appellant denied that plaintiff suffered any damage, injury or mental anguish by reason of not being with his wife in her last moments, or by not being present at her death and burial. It alleged that, for more than a year before the death of plaintiff's

wife, he had estranged himself from her; had continuously during that time refused to live with or support her, or otherwise discharge his duties to her as a husband. There were other allegations and denials in the answer, and a demurrer with the answer to certain parts of the complaint, but the demurrer was not passed upon by the court. The above excerpts from the pleadings sufficiently present the issues involved.

The proof on behalf of appellee tended to show that on September 30, 1903, his brother-in-law, J. D. Carter, at whose house appellee's wife and daughter were living, sent him the message set out above. The message was sent from Mohawk, Tenn. The message was written by the Western Union operator. Carter paid for sending the message, and gave it to the operator about 10:45 A. M. Mrs. Stroude had spinal affection and pneumonia. She died October 3, 1903. The operator at Hope, Arkansas, transmitted a message over appellant's line from Hope to Nashville on September 30, 1903. The message was addressed A. G. Stroud, Nashville, Ark. The agent sent the message from Hope to Nashville just as it was received over the wires of the Western Union. Its contents were as set forth *supra*. The appellee testified that on September 30, 1903, he lived at Nashville, Ark.; had been living there nearly a year. He knew the operator of appellant at Nashville; also the agent who delivered messages. No message had ever been delivered to him notifying him of the serious illness of his wife. If such message had been delivered, he would have gone to Mohawk to see her. His failure to go and to be with her was caused by the message not being delivered to him. He had received a letter from his daughter about the 24th of September, stating that his wife was sick, but the letter also stated that she would be able to travel in a few days. On the 30th of September, the day the telegram was received at Nashville by the operator there, appellee was working close to the depot painting a room at the Mulkey Hotel. He had been working in town, except for a few days, since he came to the State. He worked at the Mulkey Hotel and Skillern's, and had passed the depot of appellant going to his work nearly every day. In passing the depot he would say something to Marion McGee, the messenger boy, nearly every time he passed. Appellee stated

that his name was A. J. Stroude, but that if he had seen a message addressed to A. G. Stroud, he would have known that it was for him, appellee, because he knew of no other Stroude living there, and because a few days before he had received information that his wife was sick. If he had received the message from Mohawk, he would have acted on it the same as if it had been addressed A. J. Stroude. He loved his wife, their relations had been "as good as man and woman ever get along." He had arranged to bring his family out to Arkansas before his wife's death.

The testimony on behalf of appellant tended to show that its agent at Nashville, Arkansas, received the message set out above 10:30 o'clock A. M., September 30, 1903; that when the message arrived the operator gave it to the messenger boy, Marion McGee, and sent him up town with it. He did not know A. G. Stroud; did not know where he lived. He would not have delivered the message to A. J. Stroude without finding out that he was the man intended. He instructed the messenger boy to deliver the message as received. He would have delivered the message to appellee if he had said that he was from Mohawk, Tenn., had a wife very sick, and that J. D. Carter was his brother-in-law. The mistake in the initial did not necessarily cause the failure to deliver the message He did not think the mistake in the initial caused the nondelivery. Stroude lived outside the delivery limits of the company. The company did not deliver messages beyond the corporate limits of the town without a special charge. The fact that Stroude lived beyond the limits might have been one cause of the nondelivery, but it was not all the cause, for the witness would have delivered the message to Stroude if he could have done so. When the message came, the agent made and filed a copy. A few days after the message came Stroude inquired of him concerning the message, and he told Stroude that the message was not there. He did not remember then having received it. This was about ten days after the message was received. Appellant saved exceptions to the above testimony.

The messenger agent testified that in the latter part of September a message was handed to him for a person by the name of Stroude; the message was addressed to A. G. or A. J.

Stroude, he would not be certain which. He tried to find Stroude; went all around town up and down the streets; went to the Nashville Hotel and the Garner Hotel. He did not know Stroude at the time; had never heard of him. He could not remember any other house or any person he went to except one Mr. Park. It was impossible for him to say after two or three years of whom he inquired. He did not know at the time the message came where Stroude lived. He testified over appellant's objection that he was not informed by the operator that the message was a death message. Appellant saved its exceptions. Appellant called a witness who testified that he saw Marion McGee in 1903 with a telegram for a man by the name of Stroude and inquiring for him.

Several witnesses testified over the objection of appellant that they were in business in Nashville, Ark., and that the messenger boy made no inquiry of them about Stroude. The court, over the objection of appellant, permitted appellee to show in rebuttal, that Stroude and the witness frequently passed the depot before the message came in 1903, and that witness and Stroude met Marion McGee nearly every time they passed; that about ten days after the message came witness and Stroude met McGee, and witness asked him why he did not deliver the message that came to A. J. Stroude, and McGee said who is A. J. Stroude, and when Stroude was pointed out to him he said, "Of course, I know him, but I didn't know his initials." The court permitted J. D. Carter, the sender of the telegram, to testify in rebuttal that if it had been reported to him that the message addressed to A, G. Stroud could not be delivered to A. J. Stroude, he would have had the initials changed to A. J. · He would have had the message corrected. He also testified that if it had been reported to him that Stroude lived beyond the corporate limits of the town and delivery limits of the company, and that the message would not be delivered without extra charges, he (Carter) would have paid these charges. To all this testimony appellant objected, and excepted to the ruling of the court admitting it. It was admitted that if Stroude had received the message on the 30th of September he could have gone to Mohawk on the train and been with his wife before her death.

Witness J. D. Carter was asked by counsel for appellant the

following: "Wasn't this question asked you in the trial before, towit: 'Why didn't you send this telegram in care of Ballard?'" Appellee objected; the court permitted the witness to answer, but remarking: "It is not competent, but let it go." To this remark of the court appellant saved exceptions.

Witness Mrs. Friganza, the operator of the Western Union at Hope at the time the message in controversy was received there, was asked: "Did you ever make a report to the superintendent of the Western Union anything about the message, or do you remember?" and counsel for appellee showed witness transcript in the former trial. Counsel for appellant objected. The court overruled his objection, and permitted the witness to answer after reading a statement to refresh her memory from the transcript in the former trial. Appellant saved its exceptions to the court's ruling. Exceptions were saved to the ruling of the court permitting appellee's counsel to propound to appellee this question: "Your failure to be with your wife at the time of her death was caused by what?"

The court instructed the jury as follows:

"1. If you believe from a preponderance of the evidence that a message signed by the plaintiff's brother-in-law, J. C. Carter, of Mohawk, Tenn., and addressed to the plaintiff at Nashville, Arkansas, notifying him that his wife was not expected to live and asking him to come home, came to the defendant's Nashville office on the forenoon of September 30, 1903, and that by the exercise of reasonable diligence said message could have been delivered to the plaintiff on said day, and that if it had been delivered to him on said day he could and would have gone to his wife and been with her at her death, funeral and burial, and that said message was not in fact delivered to plaintiff, and that by reason thereof he was deprived of the opportunity of attending his wife in her last moments and of attending her funeral and burial, then you will find for the plaintiff, and assess his damages at whatever sum you conclude resulted from the negligent failure to deliver said message, if you should find there was a negligent failure to deliver the same.

"2. Although the jury may believe from the evidence that a mistake was made in plaintiff's initial by the Western Union Telegraph Company in transmitting to defendant company the

message in controversy, yet, if you further believe that, if the message as received by the defendant company had been shown to the plaintiff, he would have known it was intended for him and would have acted upon it, or would have gone to his wife, then the mistake in plaintiff's address can not avail defendant as a defense to this suit unless you further find that the failure to deliver the message was caused thereby or that the mistake contributed to same.

"3.  The jury are instructed that the mere fact that the plaintiff lived outside the corporate limits of the town of Nashville is no excuse for the failure of defendant to deliver the message promptly, provided such delivery could have been made within said corporate limits by the exercise of ordinary diligence on the part of the employees of the defendant.

"4.  You are instructed that if you find that the plaintiff lived outside the corporate limits of the town of Nashville, this fact can not avail defendant as a defense in this suit unless you further find from the evidence that the failure to deliver the message was occasioned thereby.

"5.  If the jury find for the plaintiff, they should, in fixing the amount of his damages, take into consideration the grief and mental anguish he suffered, if you find he suffered any by reason of his not being with his wife during her last moments and at her death, funeral and burial, provided you believe his failure to be with her at said time was caused by the negligent failure of the defendant to deliver to him the message in question, and fix the amount at whatever sum you conclude resulted from said failure of the defendant to deliver the message."

Appellant objected and excepted to the ruling of the court giving the above instructions.

Appellant asked, among others, the following instructions:

"1.  The jury are instructed that it was not the duty of the defendant railway company to deliver the message received by it addressed to A. G. Stroud to A. J. Stroude unless it was apprised that the names applied to the same person, and the burden of proving this is on the plaintiff.

"2.  The jury are instructed that it was not incumbent on the defendant railway company to make any effort to deliver to

A. J. Stroude, the plaintiff herein, a message received by it addressed to A. G. Stroud.

"4. The jury are instructed that, though the plaintiff, A. J. Stroude, may have called at the office of the defendant for express matter, or on other business, and had a conversation with the servants of the defendant, or any of them, this would not be notice to such servant or servants that the message in controversy was for A. J. Stroude, nor would such fact or facts impose on the defendant or any of its agents a duty to deliver to the plaintiff a message received by it addressed to A. G. Stroud.

"15. The law forbids the divulgence of the contents of a telegraph message, and the delivery of a message to one person which is addressed to another would be a violation of the law."

The court refused the above requests, and appellant duly excepted. Other requests of appellant were refused, but they are not noticed in brief of counsel. Other requests of appellant were granted which it is unnecessary to notice. The verdict of the jury assessed damages for appellee in the sum of $500. The court entered judgment against appellant in "the sum of $500 together with interest thereon at the rate of 6 per cent. per annum from the 30th day of September, 1903." Appellant excepted to the judgment as a whole, and "that part of it relative to interest previous to the trial." Motion for new trial reserving all exceptions saved at the trial was overruled, and this appeal taken.

*W. C. Rodgers* and *B. S. Johnson,* for appellant.

1. The court erred in its charge to the jury. The first is too broad in defining the duty of telegraph companies; it is abstract, and also requires a delivery to the sender regardless of where he lived at the time. The second seeks to evade the consequences of the error in sending the message. The third places an unjust burden on appellant in requiring it to know that appellee was working in town that day. The fourth was wrong. One living outside the delivery limits has no legal right to the company's services unless an additional charge is paid.

2. The court erred in refusing the first, second and fourth instructions requested by appellant. A telegraph company is

not authorized to deliver to one person a message addressed to another.. Moreover, it is a violation of law for the company or its agents to divulge the contents of a telegram. Kirby's Digest, § 2059.

3. It is no proof of negligence that the messenger did or did not know that the telegram was a death message. No greater duty rests upon carriers of messages to deliver one relating to death or sickness than any other. 60 S. W. 687. Reasonable effort to deliver can not be required beyond the free delivery limits. 84 Tex. 17; 81 Mo. App. 223; 3 Tex. Civ. App. 310.

4. Under the proof in this case of the neglected and unprotected condition in which appellee had left his wife and young daughter, the verdict for $500 was excessive. And in addition the court erred in allowing interest on this amount from September 30, 1903.

5. There is neither allegation nor proof that appellant knew that appellee had a daughter. Hence, before appellant could be mulcted in damages on a plea that "plaintiff could and would have been present to offer to his bereaved daughter such comfort and consolation as none but a father can give under such circumstances," notice, express or implied, must be brought home to the defendant at the time or before the message is filed for transmission. 94 S. W. 700; *Id.* 924; 75 Tex. 18; 76 Tex. 217; 85 Tex. 580; 6 Tex. Civ. App. 300. The allegation does not state a cause of action or right to recover damages, and this can be raised either in the trial or appellate court for the first time. 44 Ark. 56; 58 Ark. 39; 65 Ark. 495; 66 Ark. 113; I Ind. Ter. 225; *Id.* 20; 113 Ala. 402; 2 Wash. 428; 113 Ind. 164; 18 Wall. 99.

*Feazel & Bishop,* for appellee.

1. Appellant's denial of negligence was settled by the verdict of the jury upon the evidence and proper instructions, and its finding is conclusive.

2. In order to relieve itself from liability for failure to deliver the message because of the mistake in the name, it devolved on appellant to show that the mistake was the natural and proxi-

mate cause of its failure to deliver. 87 Tenn. 190. And therein it failed.

3. In all cases where practicable to do so, it is the duty of a telegraph company promptly to notify the sender of a message that it cannot be delivered, and the reasons therefor. Failure to do so is evidence of negligence. 126 N. C. 431; *Id.* 304; 78 Am. St. Rep. 668; *Id.* 658. A regulation requiring the payment of special delivery charges for a telegram to be delivered beyond the free delivery limits does not excuse delay in delivery, unless the sender knows or is informed that the sendee resides beyond these limits and the amount of the special delivery charge. 12 Ind. App. 136; 118 Mich. 369.

4. Appellant's objection to the allowance of interest, if well taken, can not avail here because it was not raised in the motion for new trial. 9 Ark. 67; 43 Ark. 391; 38 Ark. 413; 27 Ark. 506.

WOOD, J., (after stating the facts.) This is the second appeal in this case. *Ark. & La. Ry. Co.* v. *Stroude,* 77 Ark. 109. But the questions settled on the former appeal are entirely different from those involved here.

First. We find no error in the charge of the court. The instructions given at the request of appellee and those given at the request of appellant fairly presented the questions involved for the determination of the jury. It was a question for the jury, under the evidence, which we have fully set forth in the statement, as to whether or not appellant exercised ordinary care in delivering the message to appellee. The court properly instructed the jury that the fact that appellee lived beyond the limits of the town at the time the message was received by appellant at Nashville could not avail appellant as a defense, provided appellant by the exercise of ordinary diligence could have delivered the message to the sendee within its delivery limits, *i. e.,* the corporate limits of the town of Nashville. Likewise, that the mistake in the initials of appellee would not avail as a defense, unless the failure to deliver to appellee was caused by such mistake, or unless such mistake contributed to the failure to deliver. These were questions for the jury. They were properly submitted, and there was ample evidence to support the verdict.

There was no error in refusing the requests for instructions numbered 1, 2 and 4 asked by appellant. The operator of appellant at Nashville testified that he did "not think the mistake in the initial was the cause of the non-delivery." There was no evidence to the contrary. The requests were abstract. Moreover, the questions presented by the requests were covered by other instructions given at appellant's request. The court gave an instruction as follows: "If you find from the evidence that the negligence of the sender or of the Western Union Telegraph Company in getting the initials wrong caused or in any way, contributed to cause the failure to deliver, so that but for the co-operating or concurring fault of either the sender or the Western Union Telegraph Company the message would have been delivered, your verdict must be for the defendant." This and several others of similar purport compassed the purpose sought by the refused requests.

Instruction numbered fifteen was not applicable to any facts in proof, and if of any effect it could have been of no other than to confuse and mislead the jury. The question of unlawfully and wilfully revealing the contents of a private telegram (Kirby's Digest, § 2059) was not in the case.

Second. When witness Carter was asked if a certain question was not asked him on a former trial, the court remarked that the testimony was incompetent, but he "would let it go." This was not error. The testimony was really incompetent, for while it was proper to lay the foundation for the impeachment of the witness by asking if he did not testify to a certain state of facts at the former trial, there is nothing to show that such was the purpose of the interrogation, and the question was really improper, and the testimony incompetent. Although incompetent, the court permitted the question and answer, and appellant was not prejudiced.

We find no prejudicial error in the various assignments of error relating to the ruling of the court in admitting testimony. We have carefully considered these, but it would unnecesarily extend this opinion to discuss them in detail.

Third. The court erred in rendering judgment for $500 and interest thereon at 6 per cent. per annum from September 30, 1903. The judgment should have been for $500. This amount covered

the entire damage which the jury found that appellee had sustained. The clerk of this court will ascertain the amount of the excessive interest, and deduct it, entering judgment here for the sum of $500 and.interest at 6 per cent. per annum from the date of the rendition of the judgment in the lower court, and judgment in favor of appellant for costs of this appeal.

Fourth. The allegation in the complaint that appellee "could and would have been present to offer to his bereaved daughter such comfort and consolation as none but a father can give under such trying ordeals," did not form the basis for an element of damages in the case. Under the proof, and the instruction of the court on the measure of damages in instruction numbered five, the above allegation was eliminated.

Fifth. The verdict was not excessive.

The judgment will be modified in the manner indicated, and affirmed.