WESTERN UNION TELEGRAPH COMPANY *v.* BLAKE.

Opinion delivered June 29, 1914.

1.  TELEGRAPH COMPANIES—DEATH MESSAGE—NOTICE TO COMPANY.—A telegraph company will be held to have notice that the parties contemplate the postponing of a funeral pending the receipt of a reply from the addressee of a death message, to a message sent him, apprising him of the death of his father-in-law.  (Page 549.)

2.  TELEGRAPH COMPANIES—DELAY IN DELIVERING MESSAGE — POSTPONEMENT OF FUNERAL—HEARSAY.—The testimony of the son and son-in-law of deceased, who assisted in making the arrangements for deceased's funeral, is competent and not hearsay, as showing that the funeral would have been postponed had they received a reply from the plaintiff, stating that he would attend the funeral, to whom they sent a message announcing deceased's death.  (Page 550.)

3.  TELEGRAPH COMPANIES—DELIVERY OF MESSAGE—DUE CARE—QUESTION FOR JURY.—It is a question for the jury to determine whether defendant telegraph company exercised due care in delivering a message to the addressee thereof, who worked for a lumber company with its office inside the free delivery limits, but when the addressee himself worked outside the free delivery limits.  (Page 550.)

4.  TELEGRAPH COMPANIES—MENTAL ANGUISH—DAMAGES.—Fifty dollars damages held sufficient compensation for mental anguish suffered by plaintiff, by reason of the defendant telegraph company's failure to deliver a message announcing the death of plaintiff's father-in-law, so that plaintiff could not attend the funeral, when it appears that plaintiff had not seen deceased in seven years, did not correspond with him; when the body was not embalmed, and when other relatives had made all the funeral arrangements.  (Page 551)

Appeal from Bradley Circuit Court; *H. W. Wells,* Judge; modified and affirmed.

STATEMENT BY THE COURT.

Ben Blake instituted this action against the Western Union Telegraph Company to recover damages for mental anguish alleged to have been suffered by him on account of the negligent delay in delivering a telegram to him.

On the 16th day of September, 1913, Ruben Upshaw, the father of the wife of the plaintiff, died at his residence about thirteen miles in the country from Doniphan, Mo., and his family sent to the plaintiff the following message:

"Doniphan, Mo., September 16, 1913.
"Ben Blake, Warren, Ark.:

"Father Upshaw died this morning. Will bury tomorrow evening.

(Signed)                    "W. T. Elkins."

Elkins was also a son-in-law of Ruben Upshaw, and he sent the telegram at 3 P. M. on the day that Mr. Upshaw died. It was sent at the instance of the family to notify the plaintiff and his family of the death of Mr. Upshaw, so that they might attend his funeral. The plaintiff had been living in Warren for about seven years, and was acquainted with a great many people there. He had not visited his father-in-law since he came there to live, but had sent his family to visit him. For seventeen years prior to the time that plaintiff moved to Warren he lived on his father-in-law's farm, and his relation to his father-in-law was nearly like that of a son. The families corresponded after the plaintiff moved to Warren, although he did not himself write to his father-in-law.

The telegram in question was not delivered to the plaintiff until the morning of the 18th of September. The remains of Mr. Upshaw were buried at 4 o'clock on the evening of the 17th of September. His body was not embalmed, and the undertaker testified that the body of the deceased could not have been kept, without decomposition setting in, at that time of the year, longer than twenty-four hours. The son of the deceased testified

that he assisted his mother in making the funeral arrangements for the burial of his father, and that if they had received a message from the plaintiff asking them to delay the funeral until the arrival of himself and his family they would have done so; that the object of sending the message to the plaintiff was to notify him of the death of Mr. Upshaw so that he and his family might attend the funeral.

On the part of the defendant it was shown that the message was delivered at its office in Doniphan for transmission at about 3 o'clock on the 16th day of September, 1913; that on account of the instruments not being able to be worked the message could not be sent until 6 o'clock. It was received by the operator at Warren at 6:20 P. M. on the same day. The operator at Warren testified that he was unacquainted with the plaintiff and made every reasonable effort to find him but was unable to do so; that he inquired at the postoffice and the telephone office and was unable to locate him; that he was finally informed that he worked for the Bradley Lumber Company, and he inquired of that company but was unable to locate him; that the Arkansas Lumber Company had an office within the corporate limits and a commissary outside of the corporate limits; that he inquired at the office of that lumber company, where he thought the time of the men was kept, and that the party that answered the telephone told him that the plaintiff worked for the lumber company, but that he could not tell where he lived or what position he held; that the delivery limits of the defendant did not extend beyond the corporate limits.

In rebuttal it was shown by the plaintiff that the timekeeper of the Arkansas Lumber Company did know plaintiff, and that it was the custom of that company, when a message was sent to any of its employees at its office in the corporate limits of the city of Warren for the message to be delivered to the person to whom it was sent.

The timekeeper of the lumber company testified that the telegraph company did not inquire whether or not plaintiff worked for the lumber company.

The jury returned a verdict for the plaintiff in the sum of $250, and the defendant has appealed.

Other facts will be referred to in the opinion.

*George H. Fearons,* of New York, *N. B. Scott* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. The burden was on plaintiff to show that the funeral would have been postponed, nor did defendant have notice that it was contemplated the funeral would be postponed. 92 Ark. 219; 87 Tex. 38; 27 S. W. 52; 87 Tex. 7; 26 S. W. 490; 27 S. W. 144; 97 Tex. 298; 78 S. W. 491; 93 *Id.* 686; 77 *Id.* 273; 60 *Id.* 982. Special circumstances claimed to give rise to damages must have been in contemplation of the parties or no recovery can be had. 78 Ark. 545; 84 *Id.* 457; 80 *Id.* 554; 99 *Id.* 117; 75 *Id.* 469.

2. Incompetent testimony was admitted which was material.

3. The free delivery limits were confined to the corporate limits of Warren. Blake lived beyond the limits. 89 Ark. 402; 96 *Id.* 213; 161 S. W. 1062.

4. The verdict is excessive. 90 Ark. 59; 101 *Id.* 487.

*B. L. Herring,* for appellee.

1. There is plenty of substantial evidence that the funeral would have been postponed.

2. Where the existence of a particular mental state is a relevant fact, declarations which indicate its existence are competent circumstantial evidence, and consequently primary evidence, competent, notwithstanding that the declarant is available as a witness. 16 Cyc. 1181, subdiv. (a), 1184 subdiv. (h).

3. Appellant knew the mssage was a death message, and that damages might result from negligence in delivery. 99 Ark. 117; 80 *Id.* 554; 87 *Id.* 303.

4. The message could have been delivered within the corporate limits. It was its duty to do so. 82 Ark. 117; 98 *Id.* 87.

5. The verdict is not excessive. 80 Ark. 554.

HART, J., (after stating the facts). It is first contended by counsel for defendant that the latter had no notice that it was contemplated that the funeral would be postponed. The testimony shows that if the message had been delivered on the afternoon on which it was sent the plaintiff and his family could not have left Warren until 2 o'clock A. M. the next morning, and could not have arrived at Doniphan until between 9 and 10 o'clock on the morning of the 18th inst.; that the funeral was had at 4 o'clock on the evening of the 17th inst. Therefore, they contend that the plaintiff and his family could not have attended the funeral, had plaintiff received the message on the afternoon on which it was sent, and that the language of the telegram did not convey any notice that the funeral would be postponed.

In the case of *Harrison* v. *Western Union Telegraph Co.*, 143 N. C. 147, 10 Am. & Eng. Ann. Cas. 476, in regard to a similar contention, the court said:

"We think the learned counsel for the defendant takes a view much too restricted when he contends that the only purpose of the telegram was to notify the mother of the hour of the interment, and that nothing else was reasonably within the contemplation of the parties. The evident purpose was to notify the stricken mother at once that her son was dead, to the end that she might come without delay and have the melancholy pleasure, and perform the sacred duty, of being with his remains as long as possible before they were committed forever to the grave.

"The fact that the hour fixed for the funeral is stated in the telegram is a mere incident to the general purpose for which the telegram was evidently sent."

So it may be said here the language of the telegram notified the defendant of the near relationship between the plaintiff, the sender of the telegram, and the person

named in it. The message itself suggested that its object was to notify the plaintiff of the death of a near relative, and also carried with it the suggestion that if there was not sufficient time for the plaintiff to arrive at the hour named in the message the funeral would be postponed until he could arrive.

It is next insisted by counsel for defendant that there was no competent testimony tending to show that the funeral would have been postponed had the message been received from the plaintiff to the effect that he desired to attend it. We do not agree with them in this contention. The son and son-in-law of the deceased testified that they assisted Mrs. Upshaw in making the funeral arrangements for her deceased husband, and that it was understood and agreed between themselves that the funeral would be postponed if word was received from the plaintiff and his family that they desired to attend; that the object in sending the message to the plaintiff was to notify him and his family of the death of Mr. Upshaw in order that they might attend the funeral. The son and son-in-law having testified that they assisted in making the funeral arrangements, their testimony in regard to the postponement of the funeral was not hearsay, and was therefore competent to show that the funeral would have been postponed had the plaintiff notified them to do so.

It is next insisted by counsel for defendant that it is not liable, because the plaintiff did not live within the free-delivery limits of the telegraph company at Warren, and that no fee was paid to send a special messenger to deliver it. The testimony shows that the plaintiff was a night watchman for the Arkansas Lumber Company and lived just outside of the delivery limits of the telegraph company at Warren; that the lumber company had an office within the free delivery limits at Warren, and that it was the custom of the timekeepers to deliver telegrams to employees which were sent to its office within the free delivery limits; that the plaintiff was well known to the officers of the lumber company there, and that the

lumber company would have delivered the message to him, had it been delivered to its office within the corporate limits of Warren. The question of whether the defendant company, by the exercise of ordinary diligence, could have delivered the message to the plaintiff within its delivery limits, under the facts and circumstances adduced above, was one of fact for the jury, and was properly submitted to it for its determination. *Arkansas & Louisiana Ry. Co.* v. *Stroude*, 82 Ark. 117. See also *Western Union Telegraph Company* v. *Webb*, 94 Ark. 350. It will be remembered that, although the telegraph operator at Warren testified that he inquired at the office of the Arkansas Lumber Company for the plaintiff and was told that he worked for the company but that his address and whereabouts were not at the time known, the timekeeper for the lumber company testified that he did know the plaintiff, and that no inquiry was made of him by the telegraph company. It was also shown that if the message had been delivered to the lumber company its employees would have delivered the message to the plaintiff.

It is next contended that the verdict was excessive; and in this contention we agree with counsel for defendant. It is true that in the case of the *Western Union Telegraph Company* v. *Rhine*, 90 Ark. 57, we allowed a recovery of $400 under somewhat similar circumstances. There it was shown that the body became badly decomposed and offensive odors came from it, and we said it could have afforded the mother but little consolation or satisfaction to have viewed her son's remains in such condition, if indeed it was practical for her to view them at all. There is a great difference, however, between the affection existing between a mother and her son and a son-in-law and his father-in-law. The body of the deceased in the present case was not embalmed, and the undertaker testified that the body could not have been kept longer than twenty-four hours without becoming decomposed. Mr. Upshaw died on the morning of the 16th inst. and was buried at 4 o'clock in the afternoon on the next day. The testimony shows that, had the

telegram been delivered to the plaintiff without delay, he could not arrive at Doniphan until between 9 and 10 o'clock on the morning of the 18th. He would then have had to travel thirteen miles to the, residence where the deceased's body lay, and by the time he arrived there the body would have been necessarily discolored and badly decomposed. Therefore, instead of seeing the features of Mr. Upshaw as they appeared in life, he would only have seen his discolored and decomposed body and have been permitted to follow it to the grave. The plaintiff had not seen his father-in-law for seven years, and did not during that time visit him, although a correspondence was kept up between his family and that of his father-in-law. The plaintiff himself, however, had not written to his father-in-law during these seven years. The son and another son-in-law lived near Reuben Upshaw and made all arrangements for the funeral. There was no duty devolving upon plaintiff in that regard, and all he could have done would be to follow the body to the grave. We think under the circumstances related above that the verdict of $250 was too much. We think that $50 would have been a sufficient amount to compensate plaintiff for all mental pain suffered by him. The judgment, therefore, will be reversed, and judgment will be entered here for plaintiff in the sum of fifty dollars.