WESTERN UNION TELEGRAPH COMPANY *v.* CLARK.

4-2925

Opinion delivered March 20, 1933.

*Francis R. Stark* and *Gaughan, Sifford, Godwin & Gaughan*, for appellant.

*R. H. Peace* and *T. D. Wynne*, for appellee.

HUMPHREYS, J. This is an appeal from a judgment for $1,000 recovered by appellee from appellant in the circuit court of Calhoun County as damages for appellant's alleged negligence in failing to deliver a telegram

to her in time for her to have attended her mother's funeral. Appellee's brother, D. Anderson, sent a telegram from appellant's office in Pine Bluff between seven and eight o'clock on the morning of March 20, 1930, to appellee at Thornton, Arkansas, telling her that her mother was dead and would be buried the next morning at 11 o'clock at Mt. Carmel church. The message was directed to "Miss" Daisy Clark at Thornton, Arkansas, and signed D. Anderson. It was received by appellant's agent, O. E. McGoogan, at 8:15 o'clock A. M. on the morning it was sent, but was never delivered to appellee, for whom it was intended. The message was addressed to "Miss" Daisy Clark. Mrs. Daisy Clark was a widow, and the only Daisy Clark in Thornton, which town had a population of about 200 people. She lived 130 yards from appellant's office. When the message arrived, Walter Davidson and a boy by the name of James were in the office, and Davidson testified that the agent inquired of him about Miss Dixie Clark, and that he informed the agent that she had been visiting the James family but had returned to her home in Carthage, and that "Mrs." Daisy Clark lived about 130 steps from the station or office. The agent, McGoogan, testified that he inquired of Walter Davidson and the James boy if either knew Miss Daisy Clark and was informed that she had been visiting the James family and had returned to Carthage, her home. The girl who had been visiting the James family was "Dixie" and not "Daisy" Clark. The agent made no further inquiry, but repeated the message to the Carthage office and received an answer that Daisy Clark could not be found; and, after notifying the Pine Bluff office that Miss Daisy Clark could not be found, he filed the message. Two weeks thereafter, Mrs. Daisy Clark received a letter informing her of her mother's death and burial, together with the information that her brother had wired the day of her mother's death; whereupon she called on the agent at Thornton and received the message in a sealed envelope from him. The agent's excuse for not delivering the telegram was because it was addressed to "Miss" instead of "Mrs." Daisy Clark. With reference to the address, Anderson testified that he called

at the office of appellant in Pine Bluff and told Miss Scott, who was in charge of the office, that he wanted to send a telegram to Mrs. Daisy Clark at Thornton, stating that her mother had died and would be buried the next day at Mt. Carmel church, and that she wrote the message on a blank, which he signed without reading it or knowing that she had directed it to "Miss" Daisy Clark. Miss Scott testified that she wrote the telegram at the request and under the direction of Mr. Anderson, and that she read it to him as written before he signed it. Lionel Robinson testified that he had worked in the postoffice seven years and had the agent inquired of him where Miss Daisy Clark lived, he would have directed him to Mrs. Daisy Clark. Over the objection and exception of appellant, the following question was propounded to Lionel Robinson and answered by him:

"Q. If the Western Union agent had gone to you at the postoffice inquiring for Miss Daisy Clark, could you have directed him to Mrs. Clark here? A. I don't know whether I could have directed where she lived, but I knew her and knew her to be there."

Mrs. Clark testified that she would have understood that a telegram directed to Miss Daisy Clark was intended for her, and that she would have received the message if it had been offered to her, and would have gone to the funeral had she received it. The testimony tended to show that, when she received the information that her mother had died and been buried without getting to see her and attend her funeral, she was greatly shocked and grieved, so much so that her nerves were shattered, resulting in a loss of weight and a general breakdown. That, after the breakdown, she lost her appetite and suffered from insomnia until she could not perform her household duties, and was compelled to send for her daughter to take care of her and attend to her business.

Over the general and specific objection of appellant, the court gave appellee's requested instruction No. 1, and, over its general objection, gave appellee's requested instruction No. 2. The specific objection to instruction No. 1 was that the undisputed testimony showed that the tele-

gram was not addressed to appellee but was addressed to a "Miss" Daisy Clark, Thornton, Arkansas.

The general objection to instruction No. 2 was that it is inherently wrong.

Appellant contends for a reversal of the judgment on the ground that the undisputed testimony reflects that it was not guilty of any negligence. We cannot agree with learned counsel for appellant in their interpretation of the evidence. The mere fact that the telegram was directed to "Miss" instead of "Mrs." Daisy Clark is no excuse for not making diligent inquiry as to the whereabouts of the party for whom the message was intended. Had he made inquiry at the postoffice, he would have been directed to Mrs. Daisy Clark, who was well known in the small town of Thornton, and who was the only Daisy Clark residing there. Wallace Davidson told the agent that Mrs. Daisy Clark lived only 130 steps from the telegraph office. He knew the importance of the message and should have gone to see if the message was intended for Mrs. Clark. The slight inquiry and effort made by the agent to deliver the telegram to the sendee for whom it was intended showed an indifference on his part rather than diligence, and clearly warranted the submission to the jury of the issue whether appellant exercised reasonable diligence to deliver the telegram to the party for whom it was intended. This court ruled in the case of *Arkansas & La. Ry. Co.* v. *Stroud,* 82 Ark. 117, 100 S. W. 760, that: "A mistake in one of the initials of the person to whom a telegram was sent did not excuse the telegraph company for failure to deliver the telegram, unless the mistake caused or contributed to the failure." It cannot be said, as a matter of law under the evidence in the instant case, that the mistake in the use of "Miss" for "Mrs." caused or contributed to the failure to deliver the message, had the agent exercised reasonable diligence. Again, it is a disputed question of fact as to whether the sender of the message or appellant's agent at Pine Bluff made the mistake. We think the mistake wholly immaterial because delivery of the message could have been made, notwithstanding the mistake, had the agent exercised reasonable diligence in his search for the real sendee. 37 Cyc., p.

1673, and Arkansas cases cited therein in support of the rule.

Appellant also contends for a reversal of the judgment because the reverse side of the telegram required appellee to present a claim for her damages to appellant within sixty days after the message was received, which she failed to do. According to the record before us, this defense was not relied upon in the trial below and cannot be raised on appeal for the first time. *Western Union Telegraph Co.* v. *Freeman,* 121 Ark. 124, 180 S. W. 743.

Appellant also contends for a reversal of the judgment because the court allowed Lionel Robinson, an employee at the postoffice, to testify that, had the agent of appellant made inquiry of him, he would have directed him to go to Mrs. Daisy Clark. We think the testimony admissible because the law required that the agent, in the exercise of reasonable diligence, should make inquiry as to the identity of the sendee. The most likely place he could have obtained this information was at the postoffice.

Appellant also contends for a reversal of the judgment because the court gave appellee's requested instructions Nos. 1 and 2. Identical instructions were approved by this court in the case of *Arkansas-Louisiana Ry. Co.* v. *Stroud, supra,* the facts in the two cases being almost parallel.

Lastly, appellant contends for a reversal of the judgment because the verdict is excessive. According to the record, appellee was greatly shocked when she received information of the death and burial of her mother without an opportunity on her part to see her mother before she was buried and to attend the funeral. The shock was so intense that it shattered her nervous system to such an extent that she lost her appetite and her ability to sleep and to perform her household duties and attend to her business affairs. She was compelled, as a result of the shock, to send for her daughter to take care of her and attend to her business. Considering these results, we do not think $1,000 is an excessive verdict.

No error appearing, the judgment is affirmed.

Mr. Justices SMITH and McHANEY dissent from the affirmance of the amount of the verdict.

SMITH, J., (dissenting). The negligence of the telegraph company had nothing to do with the death of the plaintiff's mother; indeed, the purpose of the telegram was to apprise the plaintiff of that fact. It cannot be, and is not, contended that the telegraph company should make compensation, in whole or in part, for the grief which plaintiff sustained on account of her mother's death. The telegram, if promptly delivered, would have caused this anguish.

It may be assumed, and the jury no doubt found, that the plaintiff was not lacking in filial affection, and that her grief was augmented by the negligence of the telegraph company in failing to deliver the telegram promptly, as it should have done. But the plaintiff had not lived with her mother for many years, and had grown children of her own, and, as was said in the case of *Western Union Telegraph Company* v. *Weniski,* 84 Ark. 457, 106 S. W. 486, where the failure to deliver a telegram had caused a sister not to attend the funeral of her brother, her only deprivation, on account of the failure to deliver the telegram, was the melancholy pleasure of attending the funeral and the satisfaction of having fully discharged her duty to the dead. In that case the plaintiff, who was a sister of the deceased, was awarded judgment for $1,354, which the court said was so grossly excessive as to call for the reversal of the judgment, regardless of any other error in the proceedings.

In the case of *Western Union Telegraph Co.* v. *Evans,* 108 Ark. 39, 156 S. W. 424, the youngest child of a mother was deprived of the sad satisfaction of attending his mother's funeral by the negligence of the telegraph company in failing to deliver a telegram which would have advised him of his mother's death. A judgment for $3,000 was said to be so grossly excessive that it would be reversed unless a remittitur was entered reducing the judgment to $500.

In *Western Union Telegraph Co.* v. *Rhine,* 90 Ark. 57, 117 S. W. 1069, the negligent failure to promptly deliver a telegram deprived a mother of the opportunity to

attend the funeral of her son, and a judgment for $750 was said to be so excessive that it would be reversed unless there was a remittitur of all sums in excess of $400.

After some diligence I have failed to find in our reports or in those of any other appellate court any case in which a judgment for a sum as large as the judgment here appealed from has been affirmed where the only element of damage was the deprivation of the opportunity to attend a funeral, and the majority cite no such case. It is impossible, of course, to measure with any degree of accuracy or certainty the suffering thus occasioned, but the damages awarded on that account should be fair and reasonable. There is absent any testimony upon which to base a verdict for punitive damages.

I think the verdict is excessive and that a remittitur should be ordered in some amount not less than $500.

Mr. Justice McHANEY concurs in the views here expressed.